UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **DEACERO S.A.P.I. DE C.V. AND DEACERO USA, INC.,** | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )  Court No. 24-00212 |
| **UNITED STATES,** | ) ) ) |
| Defendant. | ) ) ) ) |

**COMPLAINT**

Plaintiffs Deacero S.A.P.I. de C.V. and Deacero USA, Inc. (collectively, "Deacero"), by and through their attorneys, allege and state as follows:

**ADMINISTRATIVE DETERMINATION TO BE REVIEWED**

1. Plaintiffs bring this Complaint to contest certain aspects of the final determination of the U.S. Department of Commerce ("Commerce") in the circumvention inquiry pursuant to the antidumping duty order on prestressed concrete steel wire strand from Mexico, concerning imports of certain high carbon steel wire from Mexico. *See Prestressed Concrete Steel Wire Strand From Mexico: Final Affirmative Determination of Circumvention of the Antidumping Duty Order*, 89 Fed. Reg. 79,252 (Dep't Commerce Sept. 27, 2024), and accompanying Issues and Decision Memorandum ("*Final Determination*"), as amended by *Prestressed Concrete Steel Wire Strand From Mexico: Final Affirmative Determination of Circumvention of the Antidumping Duty Order; Correction*, 89 Fed. Reg. 85,844 (Dep't Commerce Oct. 29, 2024) ("*Amended Final Determination*"). The *Final Determination* is dated September 20, 2024, and was published in the Federal Register on September 27, 2024. *See Final Determination*. The

*Amended Final Determination* is dated October 23, 2024, and was published in the Federal Register on October 29, 2024. *See Amended Final Determination*.

## JURISDICTION

2.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c), as this action was commenced under sections 516A(a)(2)(A)(i)(II) and (a)(2)(B)(vi) of the Tariff Act of 1930, as amended. 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II), (a)(2)(B)(vi).

## STANDING

3.  Deacero S.A.P.I. de C.V. is a Mexican producer of subject merchandise (*i.e.*, PC strand) as well as inquiry merchandise (*i.e.*, HCS wire), and Deacero USA, Inc. is a U.S. importer of subject merchandise as well as inquiry merchandise. Therefore, they are interested parties within the meaning of 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(A). These two entities (collectively, "Deacero") participated as parties in the U.S. Department of Commerce's circumvention inquiry that led to the contested determination, and accordingly they have standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF ACTION

4.  As this is an action involving merchandise from a free trade area country, the time limits for commencing this action did not begin to run until the 31st day after the date on which the *Final Determination* was published in the Federal Register. *See* 19 U.S.C. § 1516a(a)(5)(A). Plaintiffs commenced this action by filing a summons on November 27, 2024, within 30 days after the time limits for commencing this action began to run, *i.e.*, October 28, 2024. Plaintiffs are filing this Complaint within 30 days after filing the Summons on November 27, 2024.

Accordingly, this action is timely filed pursuant to 19 U.S.C. §§ 1516a(a)(2)(A) and 1516a(a)(5)(A), and Rule 3(a)(2) of this Court.

## BACKGROUND ON THE ADMINISTRATIVE PROCEEDING

5.      On June 9, 2023, Insteel Wire Products Company, Sumiden Wire Products Corporation, and Wire Mesh Corp. filed a circumvention inquiry request alleging that imports of high carbon steel ("HCS") wire from Mexico and further processed into prestressed concrete steel wire strand ("PC strand") in the United States are circumventing the antidumping duty order on PC strand from Mexico. *See Notice of Antidumping Duty Order: Prestressed Concrete Steel Wire Strand from Mexico*, 69 Fed. Reg. 4,112 (Dep't Commerce Jan. 28, 2004) ("*Order*"); Petitioners' Request for Circumvention Ruling (June 9, 2023). The request defined the inquiry merchandise as HCS wire with a carbon content between 0.78-0.85 percent and a diameter of less than 4.50 millimeters. Petitioners' Request for Circumvention Ruling (June 9, 2023). Commerce initiated a country-wide circumvention inquiry on July 31, 2023. *See Prestressed Concrete Steel Wire Strand From Mexico: Initiation of Circumvention Inquiry on the Antidumping Duty Order*, 88 Fed. Reg. 49,438 (Dep't Commerce July 31, 2023). Commerce's initiation notice identified the inquiry merchandise as defined in the Petitioners' circumvention request.

6.      Commerce published its preliminary determination on June 27, 2024. *See Antidumping Duty Order on Prestressed Concrete Steel Wire Strand From Mexico: Preliminary Affirmative Determination of Circumvention*, 89 Fed. Reg. 22,668 (Dep't Commerce Apr. 2, 2024), and accompanying Preliminary Decision Memorandum ("PDM"). Commerce stated that section 781(a) of the Act provides authority to expand the scope of an antidumping duty order to include "parts and components" if, among other things, "the process of assembly or completion

in the United States is minor or insignificant." PDM at 8. Commerce preliminarily found that Deacero's process to produce PC strand in the United States from HCS wire imported from Mexico is "minor or insignificant" as compared to a production process starting with primary raw materials, namely steel billets. *See id.* at 8-18.

7. Commerce also stated that section 781(a) of the Act allows Commerce to include parts or components within the scope of an order if the value of the parts or components produced in the foreign country to which the antidumping duty order applies is a significant portion of the total value of the merchandise sold in the United States. *Id.* at 18. Commerce preliminarily found that the value of the HCS wire that Deacero imports from Mexico is a significant portion of the total value of its PC strand sold in the United States. *Id.* at 18. Commerce based its analysis on a constructed value ("CV") for HCS wire calculated using Deacero's reported costs of production in Mexico. *Id.*

8. Finally, Commerce stated that section 781(a) of the Act directs Commerce to consider additional factors, including the pattern of trade. *Id.* at 18-19. Commerce preliminarily found that Deacero's pattern of trade for the period January 2019 through December 2020 as compared to the inquiry period of January 2021 through December 2022 weighed in favor of finding circumvention. *Id.* at 19. Commerce's preliminary determination also expanded the definition of inquiry merchandise to include steel wire with a carbon content between 0.60-0.85 percent and a diameter of less than 4.50 millimeters. *Id.* at 4, n.33.

9. In its case brief, Deacero argued that it would be unlawful for Commerce to include HCS wire within the scope of the order because Commerce and the U.S. International Trade Commission ("USITC") intentionally omitted HCS wire from the scope in the original investigations. Deacero Case Brief (June 14, 2024) at 2-5. Deacero noted that during the

original investigations, Commerce and the USITC repeatedly indicated their awareness that HCS wire and PC strand are different products, and that HCS wire is the primary raw material input into PC strand. *Id.* at 3-5. In addition, Deacero noted that the USITC defined the production process for PC strand as starting with wire rod and defined the domestic like product to exclude HCS wire. *Id.* at 4.

10. Deacero also argued that HCS wire is not a "part or component" of PC strand within the meaning of section 781(a) of the Act, but rather is an input that is a distinct product from the downstream subject merchandise, PC strand, and therefore that Commerce could not expand the scope to include HCS wire. *Id.* at 5-9.

11. Deacero also argued that its PC strand production process in the United States is not "minor or insignificant." *Id.* at 9-20. Deacero argued that Commerce should assess Deacero's U.S. production process relative to its process of producing PC strand in Mexico, not by reference to a production process that begins with primary iron and steel inputs (*i.e.*, steel billets or scrap). *Id.* at 9-15. Deacero also argued that the five factors listed in 19 U.S.C. § 1677j(a)(2) supported a negative determination. *Id.* at 15-20.

12. With respect to the fifth factor – "whether the value of the processing performed in the United States represents a small proportion of the value of the merchandise sold in the United States," 19 U.S.C. § 1677j(a)(2)(E) – and whether the value of Deacero's imported HCS wire is a significant portion of the total value of PC strand, 19 U.S.C. § 1677j(a)(1)(D), Deacero argued that Commerce erred in calculating a CV for the HCS wire that Deacero produces in Mexico, instead of the actual value for the product as reflected in Deacero's customs documentation. *Id.* at 19-22.

13. Deacero also argued that Commerce should make a negative determination because the pattern of trade does not support a finding of circumvention. *Id.* at 22-24. Deacero pointed to certain confidential information on the record that accounted for a relative increase in imports of HCS wire during the inquiry period (January 2021 to June 2023) as compared to the comparison period (July 2018 to December 2020), which was unrelated to circumvention. *See id.*

14. Commerce published the final determination on September 27, 2024. *See Final Determination* and accompanying Issues and Decision Memorandum ("IDM"). Commerce found that HCS wire is not "expressly" excluded from the scope of the Order and it is "irrelevant" how the USITC defined the production process for PC strand. IDM at 7. Commerce also found that it has not distinguished between a "part or component" and a "raw material" in any past circumvention inquiry and neither the statute nor the Statement of Administrative Action ("SAA") contemplates this distinction. *Id.* at 9.

15. Commerce made no changes to its preliminary findings that Deacero's U.S. production process is "minor or insignificant"; that the value of Deacero's HCS wire imported from Mexico is a significant portion of the total value of its PC strand sold in the United States; and that Deacero's pattern of imports of HCS wire support an affirmative circumvention determination. *See id.* at 12-25. In evaluating whether Deacero's U.S. production process is "minor or insignificant," Commerce continued to compare Deacero's U.S. production process to what it characterized as the "full" production process for PC strand in Mexico, starting with the beginning stages of steel production (*i.e.*, steel billets and scrap). *Id.* at 13-14. Commerce stated that its consistent practice has been to rely on the "complete" production process for

6

circumvention analyses under both section 781(a) and 781(b) of the Act, and that the USITC's description of the manufacturing process is not dispositive. *Id.* at 13.

16. Commerce also maintained that its reliance on CV rather than Deacero's actual reported sales values for imported HCS wire was within its authority under section 781(a)(1)(D) of the Act and its regulations, and that CV was purportedly more accurate than Deacero's reported sales values. *Id.* at 22. Commerce also continued to find that the pattern of trade supports an affirmative determination, because Deacero's imports increased in the inquiry period compared to the prior 30 months. *Id.* at 23-25. Commerce stated that Deacero failed to explain how the proprietary record information regarding Deacero's status as a previous U.S. producer and period of hiatus would affect Commerce's conclusion that the increase in imports supports an affirmative determination. *Id.* at 25.

## STATEMENT OF CLAIMS

### Count One

17. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 16.

18. Commerce's *Final Determination* unlawfully expands the scope of the Order to include a product, HCS wire, that was excluded from the original investigations. Commerce unlawfully failed to address Deacero's arguments and failed to provide a reasonable explanation for its conclusion that it is "irrelevant" whether Commerce and the USITC originally intended to exclude HCS wire from the scope of the order. Commerce's decision is unsupported by substantial evidence and otherwise not in accordance with law.

### Count Two

19. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 16.

20.  Commerce's *Final Determination* unlawfully expands the scope of the Order to include raw materials that are not "parts or components" within the meaning of section 781(a). Commerce unlawfully failed to address Deacero's arguments, failed to articulate a reasonable definition of "parts or components," and failed to provide a reasonable explanation for its conclusion that HCS wire is a part or component of PC strand. Commerce's decision is unsupported by substantial evidence and otherwise not in accordance with law.

### Count Three

21.  Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 16.

22.  Commerce's conclusion that Deacero's U.S. production process is "minor or insignificant" is unsupported by substantial evidence and otherwise not in accordance with law. Commerce unlawfully compared Deacero's U.S. production process for PC strand to a PC strand production process starting with primary iron and steel inputs (*e.g.*, steel billets or scrap) despite evidence that the PC strand production process starts with wire rod.

### Count Four

23.  Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 16.

24.  In assessing whether Deacero's U.S. PC strand production process is minor or insignificant, and "whether the value of the processing performed in the United States represents a small proportion of the value of the merchandise sold in the United States," 19 U.S.C. § 1677j(a)(2)(E), and whether the value of Deacero's imported HCS wire is a significant portion of the total value of its PC strand, 19 U.S.C. § 1677j(a)(1)(D), Commerce unreasonably assessed the value of Deacero's imported HCS wire based on CV. In doing so, Commerce rejected evidence of the actual value of the imported HCS wire at issue. Commerce failed to articulate a reasoned explanation for this distortive methodological choice. Commerce's decision to use CV

to calculate the value of Deacero's imported HCS wire is unsupported by substantial evidence and otherwise not in accordance with law.

### Count Five

25. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 16.

26. Commerce's finding that the pattern of trade supports an affirmative determination is unsupported by substantial evidence and otherwise not in accordance with law. Commerce considered Deacero's imports of HCS wire from Mexico during the inquiry period (from January 2021 to June 2023), and compared them to Deacero's imports of HCS wire from Mexico during the prior 30 months (July 2018 to December 2020). Commerce failed to adequately address confidential evidence on the record that contradicts Commerce's conclusion that Deacero's imports in the 2021 to 2023 period are evidence of circumvention.

### Count Six

27. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 16.

28. Commerce unlawfully expanded the circumvention inquiry while it was underway (*i.e.*, in the preliminary determination), by changing the definition of inquiry merchandise from steel wire with a carbon content between 0.78-0.85 percent and a diameter of less than 4.50 millimeters (as stated in the published notice of initiation), to include steel wire with a carbon content between 0.60-0.85 percent and a diameter of less than 4.50 millimeters. This post-initiation expansion of the circumvention inquiry was unsupported by substantial evidence and otherwise not in accordance with law.

### **REQUEST FOR JUDGMENT AND RELIEF**

**WHEREFORE**, for the foregoing reasons, Plaintiffs respectfully request that the Court:

    1)       Hold that Commerce's *Final Determination* is not supported by substantial evidence and otherwise not in accordance with law;

    2)       Remand the *Final Determination* for disposition in accordance with the Court's final opinion; and

    3)       Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Jeffrey I. Kessler
David J. Ross
Jeffrey I. Kessler
Stephanie E. Hartmann

WILMER CUTLER PICKERING
  HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6612
jeffrey.kessler@wilmerhale.com

Date: December 27, 2024