## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JOSEPH A. LAROSKI JR., JUDGE

|  |  |  |
|---|---|---|
| DEACERO S.A.P.I. DE C.V. and DEACERO USA, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Court No. 24-00212 |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| INSTEEL WIRE PRODUCTS COMPANY, SUMIDEN WIRE PRODUCTS CORPORATION, and WIRE MESH CORP., | ) ) ) | |
| Defendant-Intervenors. | ) ) ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

Of Counsel:

SPENCER NEFF
Assistant Chief Counsel
U.S. Department of Commerce
Office of the Chief Counsel for Trade
  Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, DC 20005

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

AN HOANG
Trial Attorney
Commercial Litigation Branch
United States Department of Justice
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 616-3226 | An.Hoang@usdoj.gov

July 23, 2025

*Attorneys for the Defendant*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES............................................................................................ iii

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE
AGENCY RECORD................................................................................................... 1

STATEMENT PURSUANT TO RULE 56.2 ............................................................. 2

    I.    Administrative Determination Under Review............................................... 2

    II.    Issues Presented For Review ......................................................................... 2

STATEMENT OF THE FACTS.................................................................................. 2

    I.    Legal Framework For Circumvention Inquiries............................................ 2

    II.    Background and Initiation Of Circumvention Proceeding.............................. 4

    III.    Preliminary Determination ............................................................................ 5

      A.    Determination Of Circumvention Based On 19 U.S.C. § 1677j(a)(1) Criteria............. 5

      B.    Consideration Of 19 U.S.C. § 1677j(a)(3) Factors........................................ 8

    IV.    Final Determination...................................................................................... 10

ARGUMENT ............................................................................................................. 11

    I.    Standard of Review ...................................................................................... 11

    II.    Commerce's Determination Of Circumvention Is Supported By Substantial Evidence
      And In Accordance With Law ...................................................................... 12

      A.    Commerce's Comparison Of Deacero's Production Facilities In The United States To
        Its Production Facilities In Mexico Is Supported By Substantial Evidence And In
        Accordance With Law ................................................................................ 12

      B.    Commerce's Determination That Deacero's PC Strand Production Process Is Minor or
        Insignificant Is Supported By Substantial Evidence And In Accordance With Law ... 18

    III.    Commerce's Determination That Deacero's Sourcing Of Inputs From Its Mexican
      Affiliate Supported A Finding Of Circumvention Is Supported By Substantial Evidence
      And In Accordance With Law ...................................................................... 22

CONCLUSION............................................................................................................ 24

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                      <u>Page(s)</u>

*Al Ghurair Iron & Steel LLC v. United States,*
    65 F.4th 1351 (Fed. Cir. 2023) ................................................................................. 13, 15

*Hlds (B) Steel Sdn Bhd v. United States,*
    2024 WL 244937 n.7 (Ct. Int'l Trade Jan. 23, 2024)................................................ 15

*Al Ghurair Iron & Steel LLC v. United States,*
    536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) .............................................. 13, 14, 16

*Atl. Sugar, Ltd. v. United States,*
    744 F.2d 1556 (Fed. Cir. 1984) ................................................................................ 12

*Atlantic Cleaners & Dyers, Inc. v. United States,*
    286 U.S. 427 (1934) .................................................................................................. 14

*Brown v. Gardner,*
    513 U.S. 115 (1994) .................................................................................................. 14

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ..................................................................................................11

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1966) .................................................................................................. 12

*Goldlink Indus. Co. v. United States,*
    431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ........................................................... 12

*Lignite Energy Council v. United States EPA,*
    198 F.3d 930 (D.C. Cir. 1999).................................................................................... 3

*Luoyang Bearing Factory v. U.S.,*
    26 C.I.T. 1156 (Ct. Int'l Trade 2002) ...................................................................... 19

*Macao Commer. & Indus. Spring Mattress Mfr. v. United States,*
    437 F.Supp.3d 1324 (Ct. Int'l Trade 2020) ............................................................. 15

*Nan Ya Plastics Corp. v. United States,*
    810 F.3d 1333 (Fed. Cir. 2016) ................................................................................ 22

*Nippon Steel Corp. v. United States,*
    458 F.3d 1345 (Fed. Cir. 2006) ................................................................................ 12

*Timken Co. v. United States*,
   968 F. Supp. 2d 1279 (2014) ........................................................................ 13

*United States v. Eurodif S.A.*,
   555 U.S. 305 (2009) ...................................................................................... 11

*United States v. Great Am. Ins. Co.*,
   738 F.3d 1320 (Fed. Cir. 2013) ................................................................... 19

<u>Statutes</u>

19 U.S.C. § 1677j(a) ........................................................................... passim

19 U.S.C. § 1677j(a)(1) ...................................................................... passim

19 U.S.C. § 1677j(a)(2) ...................................................................... passim

19 U.S.C. § 1677j(a)(3) ...................................................................... passim

19 U.S.C. § 1677j(b) ........................................................................... 14, 15

<u>Regulations</u>

19 C.F.R. § 351.226(h) .......................................................................... 3, 22

19 C.F.R. § 351.226(m)(1) ......................................................................... 4

<u>Federal Register Notices</u>

*Notice of Antidumping Duty Order,* 69 Fed. Reg. 4,112 (Dep't of Commerce Jan. 28, 2004)
   ......................................................................................................... passim

*Certain Uncoated Paper from the People's Republic of China* , 85 Fed. Reg. 72,624 (Dep't of
   Commerce Nov. 13, 2020) ........................................................................... 17

*Prestressed Concrete Steel Wire Strand from Mexico,* 88 Fed. Reg. 49,438 (Dep't of Commerce
   Jul. 31, 2023) .......................................................................................... passim

*Light-Walled Rectangular Pipe and Tube from the People's Republic of China,* 88 Fed. Reg.
   77,283 (Dep't of Commerce Nov. 9, 2023) .............................................. 17

*Prestressed Concrete Steel Wire Strand from Mexico,* 89 Fed. Reg. 79,252 (Dep't of Commerce
   Sept. 27, 2024) ....................................................................................... passim

*Prestressed Concrete Steel Wire Strand from Mexico: Final Affirmative Determination of
Circumvention of the Antidumping Duty Order; Correction,* 89 Fed. Reg. 85,844 (Dep't
   Commerce Oct. 29, 2024) ............................................................................. 2

Other Authorities

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, 1994
   U.S.C.C.A.N. 4040 ............................................................................................................ passim

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JOSEPH A. LAROSKI JR., JUDGE

| | |
|---|---|
| DEACERO S.A.P.I. DE C.V. and DEACERO USA, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Court No. 24-00212 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| INSTEEL WIRE PRODUCTS COMPANY, ) | |
| SUMIDEN WIRE PRODUCTS CORPORATION, ) | |
| and WIRE MESH CORP., ) | |
| ) | |
| Defendant-Intervenors. ) | |
| ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to United States Court of International Trade Rule 56.2, defendant, the United States, respectfully submits this response to the motion for judgment on the agency record filed by plaintiffs Deacero S.A.P.I. de C.V. and Deacero USA, Inc. (collectively, Deacero), ECF Nos. 28-29 (Deacero Br.). Deacero challenges the Department of Commerce's final determination issued in the circumvention inquiry of the antidumping duty order covering prestressed concrete steel wire strand from Mexico. As explained below, Deacero's motion should be denied because the final determination is supported by substantial evidence and is otherwise in accordance with law.

## STATEMENT PURSUANT TO RULE 56.2

**I.    Administrative Determination Under Review**

The administrative decision under review is *Prestressed Concrete Steel Wire Strand from Mexico*, 89 Fed. Reg. 79,252 (Dep't of Commerce Sept. 27, 2024) (*Final Determination*) (P.R. 332), as amended by *Prestressed Concrete Steel Wire Strand from Mexico: Final Affirmative Determination of Circumvention of the Antidumping Duty Order; Correction*, 89 Fed. Reg. 85,844 (Dep't Commerce Oct. 29, 2024), and accompanying Issues and Decision Memorandum (IDM) (P.R. 155).  The period of investigation is January 1, 2021, through June 30, 2023.

**II.    Issues Presented For Review**

1.    Whether Commerce's determination to compare the production process of Deacero USA to the vertically integrated production process of Deacero S.A.P.I. is supported by substantial evidence and in accordance with law.

2.    Whether Commerce's determination that Deacero's production process in the United States is minor is supported by substantial evidence and in accordance with law.

3.    Whether Commerce's determination that Deacero's imports of high-carbon steel wire increased in the years preceding the initiation of the inquiry is supported by substantial evidence and in accordance with law.

## STATEMENT OF THE FACTS

**I.    Legal Framework For Circumvention Inquiries**

To prevent circumvention of an antidumping duty order, Commerce may include merchandise completed or assembled in the United States within the scope of the antidumping duty order, if certain criteria are met.  19 U.S.C. § 1677j(a).  Commerce may do so if:

(A) {the} merchandise sold in the United States is of the same class or kind as any merchandise that is the subject of {an antidumping duty order},

(B) such merchandise sold in the United States is completed or assembled in the United States from parts or components produced in {a} foreign country . . . to which such order . . . applies,

(C) the process of assembly or completion in the United States is minor or insignificant, and

(D) the value of the parts or components . . . is a significant portion of the total value of the merchandise.

19 U.S.C. § 1677j(a)(1); *see also* 19 C.F.R. § 351.226(h) (explaining that Commerce "may include within the scope of an antidumping or countervailing duty order imported parts or components . . . that are used in the completion or assembly of the merchandise in the United States at any time such order is in effect.").

In determining whether the process of assembly or completion in the United States is "minor or insignificant" under 19 U.S.C. § 1677j(a)(1)(C), Commerce considers:

(A) the level of investment in the United States,

(B) the level of research and development in the United States,

(C) the nature of the production process in the United States,

(D) the extent of production facilities in the United States, and

(E) whether the value of the processing performed in the United States represents a small proportion of the value of the merchandise sold in the United States.

19 U.S.C. § 1677j(a)(2).  No single factor controls.  Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, 1994 U.S.C.C.A.N. 4040, 4216 (SAA). Additionally, when Congress has prescribed factors but not their relative weight, an agency is granted "a great degree of discretion in balancing them."  *Lignite Energy Council v. United States EPA*, 198 F.3d 930, 933 (D.C. Cir. 1999) (holding that the Environmental Protection Agency was granted discretion to balance factors in 42 U.S.C. § 7411(a)(1) because no one factor was controlling).

The statute identifies additional, non-exhaustive, discretionary factors to consider in weighing whether to find circumvention. 19 U.S.C. § 1677j(a)(3). Specifically, Commerce "shall take into account such factors as —":

> (A) the pattern of trade, including sourcing patterns,
>
> (B) whether the manufacturer or exporter of the parts or components is affiliated with the person who assembles or completes the merchandise sold in the United States from the parts or components produced in the foreign country with respect to which the {antidumping order} applies, and
>
> (C) whether imports into the United States of the parts or components produced in such foreign country have increased after the initiation of the investigation which resulted in the issuance of such order or finding.

19 U.S.C. § 1677j(a)(3).

Congress intended to "authorize {Commerce} to apply . . . orders in such a way as to prevent circumvention and diversion of U.S. law." Omnibus Trade Act of 1987, Report of the Senate Finance Committee, S. Rep. No. 100-71, at 101 (1987) (S. Rep.); *see also* SAA at 4216 (discussing legislative amendments that address "new circumvention scenarios"). Commerce thus possesses "substantial discretion in interpreting these terms, and invoking these measures, so as to allow it flexibility to apply the provisions in an appropriate matter . . . {and to} use {its} authority "to the fullest extent possible to combat diversion and circumvention of the antidumping and countervailing duty laws." *Id*. at 100. In conducting circumvention inquiries, Commerce considers the most appropriate remedy to address circumvention and prevent the evasion of an order. 19 C.F.R. § 351.226(m)(1).

## II.    Background and Initiation Of Circumvention Proceeding

Commerce issued an antidumping duty order covering prestressed concrete steel wire strand (PC strand) from Mexico. *Notice of Antidumping Duty Order*, 69 Fed. Reg. 4,112 (Dep't of Commerce Jan. 28, 2004) (*AD Order*). The order covers "steel strand produced from wire of

4

non-stainless, non-galvanized steel, which is suitable for use in prestressed concrete (both pre-tensioned and post-tensioned) applications." *Id.*

In June 2023, Insteel Wire Products Company, Sumiden Wire Products Company, and Wire Mesh Corp. (collectively, petitioners) requested that Commerce determine that Deacero was circumventing the antidumping duty order on PC strand. Request for Circumvention Ruling (Jun. 9, 2023) (P.R. 1, C.R. 1) at 1–2. Commerce initiated a circumvention inquiry based on the petitioners' request. *Prestressed Concrete Steel Wire Strand from Mexico*, 88 Fed. Reg. 49,438 (Dep't of Commerce Jul. 31, 2023) (P.R. 13). Commerce selected Deacero as a mandatory respondent to the inquiry. Respondent Selection Memorandum (Sep. 25, 2023) (P.R. 28).

**III.    <u>Preliminary Determination</u>**

Commerce preliminarily determined that Deacero was circumventing the order. *Antidumping Duty Order on Prestressed Concrete Steel Wire Strand From Mexico*, 89 Fed. Reg. 22,668 (Dep't of Commerce Apr. 2, 2024) (*Preliminary Determination*) (P.R. 122), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 120); *see also* Preliminary Analysis Memorandum for Deacero (Mar. 27, 2024) (P.R. 121, C.R. 183) (Prelim. Analysis Memo).

**A.    Determination Of Circumvention Based On 19 U.S.C. § 1677j(a)(1) Criteria**

Deacero reported that it produced PC strand in the United States using high carbon steel (HCS) wire imported from Mexico during the inquiry period. PDM at 7–8; Deacero Initial Questionnaire Response (Oct. 10, 2023) (C.R. 18, P.R. 38) at 1–2. Following the statutory criteria set forth in 19 U.S.C. § 1677j(a)(1)(A)–(D), Commerce therefore preliminarily found that the PC strand sold by Deacero in the United States "is of the same class or kind as the class or kind of merchandise" subject to the order. PDM at 7; 19 U.S.C. § 1677j(a)(1)(A). Commerce also preliminarily found that Deacero completed or assembled its PC strand "from parts and

components (*i.e.*, HCS wire) produced in Mexico."  PDM at 8; 19 U.S.C. § 1677j(a)(1)(B).  In

addition, Commerce determined that the HCS wire produced in Mexico by Deacero "is a

significant portion of the total value of the merchandise sold in the United States."  PDM at 18;

19 U.S.C. § 1677j(a)(1)(D); *see also* Prelim. Analysis Memo at 1–3.

      Commerce also found that the PC strand production process in the United States for

Deacero was "minor or insignificant" based on the five factors in 19 U.S.C. § 1677j(a)(2).  PDM

at 8–18; 19 U.S.C. § 1677j(a)(1)(C).  First, Commerce found that the level of Deacero's

investment for completing PC strand in the United States was "minor or insignificant."  Prelim.

Analysis Memo at 5; PDM at 9–10.  Based on record evidence, Commerce calculated Deacero's

investment in its PC strand facility in the United States as representing only [            ] of its

total investment in its integrated facilities in Mexico, and only [          ] of its investments

specific to the production of wire rod and HCS wire.  Prelim. Analysis Memo at 5 (citing

Deacero Supplemental Questionnaire Response (Feb. 6, 2024) (C.R. 65-159, P.R. 95-97) (SQR));

PDM at 9–10.  Commerce therefore preliminarily determined that Deacero's investment in its

United States PC strand facility was minor compared to its investments in its Mexico facilities

and weighed in favor of a finding that Deacero's assembly or completion of PC strand in the

United States is minor or insignificant.[1]  Prelim. Analysis Memo at 5, 18; PDM at 10.

      Second, Commerce found that the level of Deacero's research and development (R&D) in

the United States was minor.  PDM at 15; Prelim. Analysis Memo at 5–6.  Deacero reported that

it [                                         ] at its facility in the United States,

but [                    ] in its Mexican facilities.  Prelim. Analysis Memo at 5; Deacero

---

[1]  Deacero USA is a wholly-owned subsidiary of Deacero S.A.P.I.  PDM at 9; Deacero
Questionnaire Response (Oct. 18, 2023) (C.R. 20, P.R. 57) at 1.

Initial Questionnaire Response II (Oct. 31, 2023) (C.R. 31, P.R. 69) (IQR II) at 28; SQR (C.R. 65, P.R. 95) at 25. Accordingly, Commerce preliminarily found that Deacero's level and extent of R&D in the United States "weigh{ed} in favor of a finding that the process of assembly or completion in the United States is minor or insignificant." PDM at 15; Prelim. Analysis Memo at 6.

Third, Commerce found that the nature of Deacero's production process of PC strand in the United States was relatively minor. Commerce determined that Deacero's production process for PC strand includes: the collection and sorting of steel scrap; the production of steel billets; the rolling of billets into wire rod; the drawing of wire rod into HCS wire; and the winding and stabilizing of PC strand from HCS wire. Prelim. Analysis Memo at 6–7; PDM at 16; Deacero Second Supplemental Questionnaire Response (Mar. 8, 2024) (C.R. 165, P.R. 110) (SQR II) at 4. Because Deacero's production of PC strand in the United States only involved the last step— processing HCS wire into PC strand—Commerce preliminarily found that the nature of Deacero's production process in the United States "weigh{ed} in favor of a finding that the process of assembly or completion in the United States is minor or insignificant." PDM at 16; Prelim. Analysis Memo at 7; IQR II at 28–30.

Fourth, Commerce similarly found that the extent of Deacero's production facilities in the United States was relatively minor in comparison to its production facilities in Mexico. PDM at 16–17; Prelim. Analysis Memo at 7–9. Deacero reported that it produced PC strand at its sole facility in the United States. Prelim. Analysis Memo at 7; PDM at 16–17; IQR II at 18, 29–30. In contrast, Deacero also reported that it produced PC strand, HCS wire, wire rod, and steel billets across various facilities in Mexico. Prelim. Analysis Memo at 8–9; PDM at 16–17. Given the "significant extent of production facilities Deacero operates in Mexico to produce PC strand,

HCS wire, wire rod and billets," Commerce preliminarily found the extent of Deacero's production of PC strand from HCS wire in the United States to weigh in favor of finding that the process of assembly or completion of PC strand in the United States to be "minor or insignificant." Prelim. Analysis Memo at 9; PDM at 17; *see* IQR II at 4–6, 8–10; SQR at 12–15, 17; SQR II at 6–7.

Fifth, Commerce found that the value of processing HCS wire into PC strand in the United States was a "small proportion of the value of the merchandise sold in the United States." Prelim. Analysis Memo at 10; PDM at 17. Based on cost and financial data reported by Deacero, Commerce determined the value of processing performed by Deacero's facility in the United States to be [        ] percent of the value of PC strand sold. Prelim. Analysis Memo at 10; SQR (C.R. 119), Ex. Supp-9. Accordingly, Commerce preliminarily determined that this represented a "small proportion of the value of merchandise sold in the United States, which weigh{ed} in favor of finding that the process of assembly or completion in the United States is minor or insignificant." PDM at 17; Prelim. Analysis Memo at 10.

In sum, Commerce preliminarily determined that all four criteria under 19 U.S.C. § 1677j(a)(1) were satisfied to make an affirmative determination of circumvention. PDM at 6–18, 21. In particular, Commerce determined that all five factors enumerated in 19 U.S.C. § 1677j(a)(2) weighed in favor of a preliminary finding that Deacero's process of assembly or completion of PC strand in the United States is minor or insignificant. PDM at 18.

### B.    Consideration Of 19 U.S.C. § 1677j(a)(3) Factors

Commerce also considered additional factors pursuant to 19 U.S.C. § 1677j(a)(3). First, Commerce considered patterns of trade with respect to imports of PC strand into the United States. PDM at 19. Commerce determined that U.S. imports of PC strand from Mexico remained at zero for each of the five years preceding the initiation of the circumvention inquiry,

and that imports of PC strand from the rest of the world increased by 5.08 percent over the same period.  PDM at 19; SQR (C.R. 111), Ex. Supp-3-B.  Commerce therefore determined that this pattern of trade did not indicate that imports of PC strand shifted away from Mexico, which weighed against a finding of circumvention.  PDM at 19.  Commerce, however, also found that U.S. imports of HCS wire from Mexico increased 67.1 percent between 2019-2020 and 2021-2022.  PDM at 19.  In contrast, U.S. imports of HCS wire from other countries increased only 15.2 percent.  PDM at 19.  Commerce therefore determined that this pattern of trade indicated a shift of U.S. imports of HCS wire to Mexico from the rest of the world, which weighed in favor of a finding of circumvention.  PDM at 19.  Commerce also found data provided by Deacero indicated a shift in sourcing patterns that supported a finding of circumvention.  PDM at 19; *see* Prelim. Analysis Memo at 10.  In particular, Deacero's exports of PC strand from Mexico to the United States was [                                                    ].  Prelim. Analysis Memo at 10.  In contrast, Deacero's U.S. sales of PC strand produced in the United States was [                    ] in 2019 and 2020 but [                        ] from January 2023 to June 2023.  *Id*. Based on the totality of the circumstances, Commerce determined that the pattern of trade of PC strand supported a preliminary determination of circumvention.  PDM at 19; Prelim. Analysis Memo at 10; 19 U.S.C. § 1677j(a)(3)(A).

Second, Commerce considered the affiliation between Deacero S.A.P.I. and Deacero USA.  PDM at 20.  Because Deacero USA is a wholly-owned subsidiary of Deacero S.A.P.I., Commerce determined that the two entities were affiliated.  PDM at 20.  And because Deacero USA produced PC strand from imported HCS wire from Deacero S.A.P.I., the affiliation weighed in favor of a preliminary finding of circumvention.  PDM at 20; 19 U.S.C. § 1677j(a)(3)(B); IQR II at 5, 9–10.

Third, Commerce considered whether imports of HCS wire into the United States increased after it issued the order. Based on official U.S. import statistics, Commerce calculated that the quantity of HCS wire imports into the United States increased by 67.1 percent between 2019 and 2022. PDM at 20. Commerce also considered Deacero's purchases of HCS wire from Mexico. Prelim. Analysis Memo at 11. Commerce determined that Deacero USA purchased [

          ] kilograms of HCS wire from Deacero S.A.P.I. from July 2018 to December 2020 but purchased [          ] kilograms from January 2021 to June 2023, representing an increase of [          ] percent. Prelim. Analysis Memo at 11; SQR (C.R. 113), Ex. Supp-4-A. Commerce also determined that Deacero used [          ] kilograms of the HCS wire purchased from Mexico during the inquiry period to produce PC strand in the United States, accounting for [

] percent of the increase in shipments. Prelim. Analysis Memo at 11; SQR (C.R. 110), Ex. Supp-3-A. Commerce preliminarily determined that these facts weighed in favor of finding circumvention. PDM at 20; Prelim. Analysis Memo at 11.

In summary, Commerce found that the production process for Deacero based on the five factors under 19 U.S.C. § 1677j(a)(2) was minor or insignificant. IDM at 21. Commerce also found that the three factors listed in 19 U.S.C. § 1677j(a)(3) supported a finding that circumvention was occurring. *Id.* Commerce found that all of the other factors necessary under 19 U.S.C. §§ 1677j(a)(1)(A), (B), and (D) for a circumvention finding were met, and preliminarily determined to apply a circumvention finding on a country-wide basis. *Id.*

**IV.    Final Determination**

Without modifying its conclusions in the preliminary determination, Commerce continued to find that Deacero circumvented the order in the final determination and responded to comments filed by Deacero regarding several aspects of Commerce's determination. *See* IDM at 1–2.

10

In particular, Commerce addressed Deacero's arguments that its PC strand production processes in the United States was not minor or insignificant.  IDM at 12–21; *see* Deacero Case Br. (June 17, 2024) (C.R. 190, P.R. 148) at 9–20.  Commerce rejected Deacero's contention that the analysis should be "relative to the process of producing PC strand from wire rod in Mexico." IDM at 12; Deacero Case Br. at 9–10.  Because it was within Commerce's established practice to compare U.S. production to the "full production process" outside the United States, Commerce compared Deacero's PC strand production in the United States against its "operations in Mexico to produce PC strand, including of intermediate inputs (*i.e.*, wire rod and steel billets)."  IDM at 12, 17.  Commerce also rejected Deacero's argument that its analysis was contrary to its prior practice or 19 U.S.C. § 1677j(a), or that it should "adhere to the ITC's description of the PC strand manufacturing process."  IDM at 13–17; Deacero Case Br. at 11–15.  Accordingly, Commerce made no changes to its analysis of the statutory factors to find circumvention.  IDM 17–21; *see* Deacero Case Br. at 15–20.[2]

## ARGUMENT

### I.    Standard of Review

This Court sustains any determination, finding, or conclusion by Commerce unless it is unsupported by substantial evidence, or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i); *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing inconsistent conclusions does not make Commerce's findings unsupported by substantial

---

[2]  Commerce addressed additional arguments in the final determination but Deacero has elected not to raise those arguments here.  *See* Deacero Br. at 6, n.1.

evidence. *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Thus, a party challenging

an agency determination under the substantial evidence standard "has chosen a course with a

high barrier to reversal," *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir.

2006) (cleaned up), and the Court sustains Commerce's factual determinations as long as they

are reasonable and supported by the record as a whole, even if some evidence detracts from the

agency's conclusions. *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984).

The Court will not substitute its judgment for Commerce's in choosing between two fairly

conflicting views, even if it could "justifiably have made a different choice had the matter been

before it de novo." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l

Trade 2006).

## II.    Commerce's Determination Of Circumvention Is Supported By Substantial Evidence And In Accordance With Law

To find that PC strand assembled or completed by Deacero in the United States

circumvents the order, Commerce has demonstrated that all four criteria under 19 U.S.C §

1677j(a)(1) are satisfied. *See* PDM at 21. Here, Deacero disputes Commerce's finding with

respect to only one criterion: that its process of assembling or completing PC strand in the United

States is "minor or insignificant." Deacero Br. 11–37; 19 U.S.C § 1677j(a)(1)(C).

### A.    Commerce's Comparison Of Deacero's Production Facilities In The United States To Its Production Facilities In Mexico Is Supported By Substantial Evidence And In Accordance With Law

To determine whether a process of assembly or completion is "minor or insignificant"

under 19 U.S.C. § 1677j(a)(1)(C), the statute identifies five factors that Commerce "shall take

into account" but does not otherwise instruct Commerce how to evaluate those factors. 19

U.S.C. § 1677j(a)(2). Commerce evaluates the factors "depending on the particular

circumvention scenario" and "{n}o single factor will be controlling." SAA at 4216. Congress

recognized "the need for flexibility in administering this standard." *Al Ghurair Iron & Steel LLC v. United States*, 536 F. Supp. 3d 1357, 1375 n.5 (Ct. Int'l Trade 2021) (*Al Ghurair I*), *aff'd*, 65 F.4th 1351 (Fed. Cir. 2023) (*Al Ghurair II*) (quoting S. Rep. 103-412 at 82).

Commerce found that Deacero's production process for PC strand in the United States was minor or insignificant, as compared to its production process in Mexico. *See* IDM at 12; *see also* PDM at 9–19. Commerce's analysis was based in part on Deacero's own reporting, which established that Deacero performs all aspects of PC strand production in Mexico. *See* PDM at 13–14 (citing SQR (P.R. 95, C.R. 65) at 15–17); *see also* IDM at 14–15. Commerce therefore determined that it would be appropriate to compare Deacero's U.S. production of PC strand to its production in Mexico.

Commerce's determination is consistent with 19 U.S.C. § 1677j(a). As Deacero effectively admits, neither the statute nor the SAA "describe or define" how Commerce should determine whether a particular process of assembly or completion is minor or insignificant. Deacero Br. at 14–15. And neither § 1677j(a) nor the SAA explicitly proscribe Commerce from comparing a process of assembly or completion in the United States against a more comprehensive process of manufacture outside the United States. In fact, the SAA leaves the choice of methodology within Commerce's discretion, providing that Commerce will evaluate § 1677j(a)(2) factors "depending on the particular circumvention scenario." SAA at 4216. When a statute "places no other limits on the methodologies that Commerce may employ . . . , {it} leav{es} Commerce discretion as to the choice of methodologies." *Timken Co. v. United States*, 968 F. Supp. 2d 1279, 1286 n.7 (2014), *aff'd*, 589 F. App'x 995 (Fed. Cir. 2015) (Here, Commerce reasonably chose to compare Deacero's process of stranding HCS wire into PC strand in the United States against Deacero's production process for PC strand in Mexico, because the

13

comparison "indicates what portion of the total value of the merchandise subject to this inquiry is accounted for by the last steps of processing." IDM at 13 (quoting PDM at 14-15).

This Court and the Federal Circuit have sustained this same comparative analysis as reasonable and consistent with the statute. *See Al Ghurair I*, 536 F. Supp. 3d at 1368. In *Al Ghurair I*, the Court reasoned this analysis of "the total sum of investment is useful to gauge the level of investment {} in a third country" and "helps also to ensure that larger companies with much smaller operations in a third country — operations that may appear significant in absolute terms given the size of the firm, but that comprise a small share of total operations — will not be able to elude an AD/CVD order simply on account of the firm's large overall size."). *Id*.; *see also* IDM at 13 (citing the same).

Deacero argues that the Federal Circuit's opinion in *Al Ghurair*, which sustained Commerce's methodology, is inapposite because it applies to 19 U.S.C. § 1677j(b) as opposed to 19 U.S.C. § 1677j(a). Deacero Br. at 13–14. But there is hardly any distinction in the law or in the SAA between the two provisions. "{T}here is a presumption that a given term is used to mean the same thing throughout a statute." *Brown v. Gardner*, 513 U.S. 115, 118 (1994) (citing *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1934)). Here, the entire text of 19 U.S.C. § 1677j(a)(2), which establishes the criteria used to determine whether a production process is minor or insignificant, is identical to that of § 1677j(b)(2), but for the use of the term "United States" in place of "foreign country." Aside from the term "minor and significant," the two statutory provisions are structurally similar, imposing the same general requirements with only minor differences to account for further assembly in the United States as opposed to a foreign country. *Compare* 19 U.S.C. § 1677j(a) *with* § 1677j(b). Even the SAA, when discussing the rationale behind the legislative changes resulting in §§ 1677(a) and (b), almost

14

invariably addresses the two provisions as one.  *See* SAA at 4216–17.  Therefore, it is reasonable

for Commerce to apply the same comparative "minor and insignificant" methodology in

administering both statutes.  And the Federal Circuit's holding that Commerce's comparative

methodology comports with 19 U.S.C. § 1677j(b) should apply equally to 19 U.S.C. § 1677j(a).

*See Al Ghurair II*, 65 F.4th 1351 (holding that "Commerce reasonably explained that its

comparison 'indicate{d} what portion of the total value of the merchandise subject to these

inquiries is accounted for by the last step of processing.'").[3]

      Notwithstanding judicial precedent sustaining Commerce's methodology, Deacero argues

that Commerce's interpretation and application of the statute are inconsistent with the direction

of the SAA.  Specifically, Deacero argues that the SAA is only intended to address "stereotypical

circumvention" scenarios such as "screwdriver assembly" operations.  Deacero Br. at 15 (citing

SAA at 893-94).  But the Court has dismissed this argument before, explaining that "the SAA's

reference to 'screwdriver assembly operations' plainly alludes to production operations in a third

country that are 'minor or insignificant.'"  *See Hlds (B) Steel Sdn Bhd v. United States*, Case No.

21-638, slip op. 24-6, 2024 WL 244937  at *4 n.7 (Ct. Int'l Trade Jan. 23, 2024).

      The Court should dismiss this argument again here.  The statute unambiguously states the

criteria by which Commerce is to assess in determining whether a production process is minor or

insignificant; therefore, the term "screwdriver assembly" as used in the SAA is only illustrative

and does not narrow the interpretation of the statute.  Deacero also argues that the SAA, in

---

[3]  Deacero argues that "Commerce's Determination is Contrary to CIT and Federal
Circuit Case Law," but only cites two cases in which Commerce was sustained in full, and which
affirm Commerce's circumvention practice.  Deacero Br. at 18–21 (citing *Al Ghurair I*; *Al
Ghurair II*; *Macao Commer. & Indus. Spring Mattress Mfr. v. United States*, 437 F.Supp.3d 1324,
1329 (Ct. Int'l Trade 2020)).  Deacero argues that those cases, as cited by Commerce, are
inapposite, but fails to cite any judicial precedent itself in support of its argument.

stating that the circumvention statute "will not deter legitimate investment," renders Commerce's comparative methodology inconsistent with the statute. But Deacero's argument rests on a selective reading of the SAA. The full provision reads:

> {b}ecause Commerce will find circumvention only where assembly or completion operations in the United States or in third countries are minor, the proposed amendments will not deter legitimate investment, characterized by the addition of substantial value.

SAA at 4217. Based on a logical reading of the SAA, the question of whether investment is "legitimate" is predicated on whether assembly or completion is "minor." Therefore, the term "legitimate investment" does not appear in the statute and is not for Commerce to consider, and Deacero's argument is inapposite.

Deacero then argues that Commerce erred by including wire production in its definition of the production process. As a factual matter, Deacero argues that Commerce erred in characterizing Deacero's production facilities in Mexico as a "vertically integrated" PC strand facility. Deacero Br. at 16–17. According to Deacero, its facilities in Mexico cannot be "vertically integrated" because no one facility can produce at all stages of PC strand. But as Commerce explained in the preliminary determination, "{t}o be considered integrated, it is not necessary for each step of production to occur within the same plant {}; but rather there be a common ownership and supply of inputs between the facilities." PDM at 14. The relevant question driving the use of Commerce's comparative methodology is "whether a producer would reasonably move its further processing across borders to avoid the discipline of an order." *See* IDM at 15; *see also Al Ghurair I*, 536 F. Supp. 3d at 1368. A foreign producer with multiple factories, which supply each other with inputs, and which are each owned by the same overall parent would be able to move its production process across borders, regardless of the factories' locations. Therefore, Commerce's interpretation of the term "vertically integrated" and

16

description of Deacero's Mexican facilities as such is reasonable. Deacero does not address this point, but rather elects to continue referring to its Mexican facilities as a "hypothetically integrated" facility.

Finally, Deacero argues that Commerce contradicted its past practice in deviating from the International Trade Commission's (ITC) description of the production process for PC strand. *See* Deacero Br. at 21–26 (citing, *e.g.*, *Certain Uncoated Paper from the People's Republic of China*, 85 Fed. Reg. 72,624 (Dep't of Commerce Nov. 13, 2020) (prelim. circumvention det.)).[4] Commerce's practice for circumvention inquiries conducted under 19 U.S.C. §§ 1677j(a) and (b) is to "rely on the complete production process to compare the investment, R&D, nature of the production processes, and extent of production facilities present." *See Final Determination*, IDM at 15. The fact that the description of the production process contained in the ITC report sometimes overlaps with Commerce's definition of the production process does not mean that Commerce has a "practice" of "relying" on the ITC report to define the production process, as Deacero suggests. In all of the cases cited by Deacero, Commerce has, at best, only cited to the ITC report as support, and has never articulated a practice of substituting its own findings with those of the ITC. Indeed, Commerce said as much in the final determination and in the prior circumvention inquiry into light-walled rectangular pipe and tube. *See Final Determination*, IDM at 17 (citing *Light-Walled Rectangular Pipe and Tube from the People's Republic of China*, 88 Fed. Reg. 77,283 (Dep't of Commerce Nov. 9, 2023) (final circumvention det.) (*LWRPT from*

---

[4] For brevity, we do not cite to each of the administrative determinations included by Deacero in its brief. Deacero cites multiple examples to establish the same point, which we do not dispute – that Commerce has previously cited the ITC's description of the production process in its circumvention determinations. Every example cited by Deacero is inapposite for the same reasons explained in this section.

*China*), and accompanying Issues and Decision Memorandum (IDM) at 44.  In *LWRPT from*

*China*, Commerce stated:

> {t}he manufacturing process described in ITC reports, which were issued in a
> different context for different purposes, are not binding to Commerce's
> circumvention analysis, nor do they encompass the entire manufacturing processes
> required to produce subject merchandise from the beginning stages.

*LWRPT from China*, IDM at 44.  It is therefore not Commerce's practice to defer or rely on the

ITC report, and likewise not arbitrary in this case to decline to do so.  Moreover, Commerce's

determination to base its evaluation of the minor or insignificant factors on a comparison

between Deacero's U.S. production process of PC strand and Deacero's integrated production

process in Mexico is supported by substantial evidence and in accordance with law, and should

be upheld.

**B.    Commerce's Determination That Deacero's PC Strand Production Process Is Minor or Insignificant Is Supported By Substantial Evidence And In Accordance With Law**

Based on its comparative methodology, Commerce found that each of the factors listed in

19 U.S.C. § 1677j(a)(2) supported a finding that the production process for Deacero was minor

or insignificant.  IDM at 18–20.  Deacero mounts arguments against Commerce's evaluation of

the individual minor and insignificant factors, but its arguments are largely duplicative of its

challenges to Commerce's broader circumvention methodology.  Deacero Br. at 30–37.  For

three of the factors (the level of investment, the nature of the production process, and the extent

of the production facilities), Deacero attempts to explain why Commerce's determination would

have been erroneous had Commerce compared Deacero U.S. production of PC strand to one step

of Deacero's production process of PC strand across its facilities in Mexico.  Deacero's

arguments in this respect are moot because, for each of these factors, Commerce compared

Deacero's production process in the U.S. to the production process for PC strand in Mexico,

which entails "melt{ing} scrap into steel billets, roll{ing} them into wire rod, and draw{ing} the wire rod into {high-carbon steel} wire." IDM at 18–19. In other words, Deacero cuts at least two steps of the PC strand production process out from its proffered analyses. Deacero "may not usurp Commerce's role as fact-finder and substitute {Deacero's} analysis for the result reached by Commerce." *See Luoyang Bearing Factory v. U.S.*, 26 C.I.T. 1156, 1173 (Ct. Int'l Trade 2002).

To the extent that Deacero contests the merits of Commerce's factual determinations, Deacero's arguments are inadequately developed and should be deemed waived. *See Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1347 (Fed. Cir. 2016). For example, with respect to the level of investment, Deacero simply asserts that its investments in its sole U.S. facility "weigh against a finding that its U.S. process is 'minor or insignificant.'" Deacero Br. at 31. For the nature of the production process and the extent of production facilities, Deacero does not engage with Commerce's factual findings at all, and instead argues what Commerce should have done had it adopted Deacero's preferred analytical framework. *See Luoyang*, 26 C.I.T. at 1173 (stating that a party "may not usurp Commerce's role as fact-finder and substitute {its} analysis for the result reached by Commerce."). For none of the five factors does Deacero address whether Commerce's determination is consistent with the relevant statutory provisions and supported by substantial evidence. Deacero therefore fails to demonstrate any basis for relief. *See United States v. Great Am. Ins. Co.*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived." (citations omitted)).

With respect to the nature of the production process, Deacero adds that "unless a producer is manufacturing PC strand from primary iron or steel inputs (*i.e.*, steel billet or scrap)

in the United States, that producer's process will be considered 'minor or insignificant' and, therefore, to be circumventing the Order." Deacero Br. at 34. But this argument, which finds  no basis in law, dramatically overstates Commerce's finding with respect to this lone factor. Specifically, Commerce found that Deacero's U.S. production process "only involve{s} processing the HCS wire into PC strand rather than also making the HCS wire from wire rod or the wire rod from basic inputs." *See* IDM at 18–19. So Deacero's hypothetical concern is not even reflective of the Commerce's determination. Further, the nature of the production process is one of the five factors that Commerce must evaluate when determining whether the production process in the U.S. is minor or insignificant, which in turn is one of the four mandatory findings that Commerce must make before making an affirmative circumvention finding. *See generally* 19 U.S.C. §§ 1677j(a)(1) and (2). In addition to those four factors, Commerce must consider trade patterns, affiliation, and changes in input sourcing pursuant to 19 U.S.C. § 1677j(a)(3). Therefore, Deacero's characterization of Commerce's finding as "absurd" is misplaced, especially given Deacero's failure to identify any deficiency in Commerce's analysis. As for the fact that multiple U.S. producers purchase Mexican-origin wire rod to produce PC strand, Deacero does not articulate what bearing that finding should have on Commerce's finding. Commerce found that Deacero, and not any other domestic producer of PC strand, circumvented the order. *See generally Final Determination*. Therefore, it is unclear why Deacero argues that "Commerce's reasoning here would produce an absurd result of finding that {the petitioners themselves} were circumventing the order." Deacero Br. at 34-35.

   Deacero then challenges Commerce's finding with respect to the level of R&D. Deacero Br. at 31–32. Although Commerce recognized that "neither Deacero's U.S. nor Mexico operations are R&D intensive," it nonetheless found that the low level of Deacero's R&D

expenditures supported a finding that the production process in the United States was minor. IDM at 18. Deacero argues that Commerce's finding cuts against its stated practice of comparing the production process in the United States to the process in the country to which an order applies. Deacero Br. at 31–32. But Deacero's argument is incorrect for two reasons. First, Commerce *did* compare the level of R&D in the U.S. to the level of R&D in Mexico, and found that Deacero's U.S. R&D expenditures were minor. *See* Prelim. Analysis Memo at 5–6 (unchanged in final determination). Second, it would be unreasonable for Commerce to blindly follow its practice in a manner that leads to an absurd result. Here, Deacero reported [        ] R&D expenditures in the United States. *Id.* It is inconceivable how a [

                                                                                        ].

Finally, Deacero argues that, with respect to the value added by its U.S. production process, Commerce's calculation methodology "implicitly inflates" the value of HCS wire that Deacero used in its U.S. production process. Deacero Br. at 36–37. But Deacero does not identify any aspect of Commerce's calculation methodology which is unreasonable, much less contrary to law. Deacero's argument apparently rests on the fact that Commerce found the value of the inputs used by Deacero to create PC strand in the United States to constitute [        ] percent of the total value of finished merchandise, pursuant to 19 U.S.C. § 1677j(a)(1)(D). But this statutory provision is entirely separate from 19 U.S.C. § 1677j(a)(2)(E), and is calculated using a completely different methodology.

Specifically, under 19 U.S.C. § 1677j(a)(1)(D), Commerce calculated the total cost of the HCS wire produced in Mexico, then divided that figure by the value of the PC strand produced by Deacero USA, to determine the value of the HCS wire produced in Mexico. *See* Prelim. Analysis Memo at 2–3. Under 19 U.S.C. § 1677j(a)(2)(E), Commerce summed the costs

reported by Deacero to produce PC strand in the United States during the period of inquiry, and divided that figure by the value of its U.S. sales of PC strand during the inquiry period, and determined that the value added by its U.S. production process was [       ] percent of the finished product.  *Id.* at 10.  With respect to both provisions, Commerce followed its regulation at 19 C.F.R. § 351.226(h) in deriving the value of merchandise from the cost of production. Deacero does not identify any alleged error in Commerce's methodology, and its argument seemingly rests on the assumption that the figures calculated under the 19 U.S.C. §§ 1677j(a)(1)(D) and (2)(E) should add up to a total of 100 percent.  But Commerce's calculations only consider the cost of producing merchandise in each country as a proportion of total value in both countries, and do not account for the value added for profit or third-country materials. Therefore, it is reasonable, if not expected, that the figures calculated under those two provisions would not equate to the total value of the completed merchandise.  Again, to the extent that Deacero disputes any particular aspect of Commerce's calculation under 19 U.S.C. § 1677j(a)(2)(E), Deacero has not adequately developed its argument, and its argument should be considered waived.  *See Nan Ya*, 810 F.3d at 1347.

**III.     Commerce's Determination That Deacero's Sourcing Of Inputs From Its Mexican Affiliate Supported A Finding Of Circumvention Is Supported By Substantial Evidence And In Accordance With Law**

Commerce's determination that Deacero's increased imports of HCS wire from Mexico supported a finding of circumvention pursuant to 19 U.S.C. § 1677j(a)(3)(C) is supported by substantial evidence.  Section 1677j(a)(3)(C) requires Commerce to consider "whether imports into the United States of the parts or components produced in such foreign country have increased after the initiation of the investigation which resulted in the issuance of such order or finding."  Commerce has found that this statutory provision is not time-limited, and does not require Commerce to determine only whether imports increased "immediately" after the

initiation of the investigation. *See* IDM at 23. In this case, Commerce compared the level of Deacero's imports from the period July 2018 to December 2020 (the comparison period) to the period January 2021 to June 2023 (the inquiry period). *Id.* Commerce based the comparison period and the inquiry period on the request for circumvention inquiry, which alleged that imports of high-carbon steel wire increased starting in 2019. *Id.* at 24; *see also* Petitioners' Supplemental Questionnaire Response (Jun. 30, 2023) (C.R. 3, P.R. 5) at 4–5. Commerce found that imports increased significantly over that period. *See* PDM at 20; Prelim. Analysis Memo at 11 (unchanged in final determination); SQR (C.R. 113), Ex. Supp-4-A; SQR (C.R. 110), Ex. Supp-3-A. Therefore, substantial evidence supports Commerce's determination that an increase in imports weighs in favor of finding circumvention under 19 U.S.C. § 1677j(a)(3)(C).

Deacero does not contest Commerce's finding that imports increased. Instead, Deacero argues that Commerce used an improper comparison period and failed to take into account contrary evidence. Deacero Br. at 37–41. As Commerce explained in the final determination, the use of this comparison period was entirely reasonable in light of petitioners' allegation, and not "results-driven" as Deacero argues. *See* IDM at 24; *see also* Deacero's Br. at 40. The remainder of Deacero's argument rests on evidence that Deacero describes as exculpatory, but ultimately goes to the reason for the increase in Deacero's imports over the inquiry period. *See* Deacero Br. at 37–40. Deacero argues that Commerce failed to take record evidence into account, but the statute does not require Commerce to consider Deacero's reason for an increase in imports. 19 U.S.C. § 1677j(a)(3)(C). Deacero cites no authority in the law or in Commerce's practice that would compel Commerce to consider the reason or motivation behind a surge in imports. *See* IDM at 25. Therefore, because Deacero does not challenge any other aspect of

Commerce's determination, the Court should sustain Commerce's final determination with respect to this finding, and with respect to all other findings briefed herein.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Deacero's motion for judgment on the agency record, sustain Commerce's final determination, and enter judgment for the United States.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

Of Counsel:

SPENCER NEFF                                    /s/ An Hoang
Assistant Chief Counsel                         AN HOANG
U.S. Department of Commerce                     Trial Attorney
Office of the Chief Counsel for Trade           Commercial Litigation Branch
  Enforcement and Compliance                    United States Department of Justice
1401 Constitution Avenue, NW                    P.O. Box 480 | Ben Franklin Station
Washington, DC 20005                            Washington, DC 20044
                                                (202) 616-3226 | An.Hoang@usdoj.gov

July 23, 2025                                   *Attorneys for the Defendant*

**<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that the foregoing brief complies with the Rules of this Court and the

Court's scheduling order in that it contains no more than 7,431 words, excluding the table of

contents, table of authorities, any addendum containing statutes, rules or regulations, any

certificates of counsel, and counsel's signature, as calculated by the word processing system used

to prepare this brief (Microsoft Word).

<u>/s/ An Hoang</u>

25

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JOSEPH A. LAROSKI JR., JUDGE

|  |  |  |
|---|---|---|
| DEACERO S.A.P.I. DE C.V. and DEACERO USA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Court No. 24-00212 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| INSTEEL WIRE PRODUCTS COMPANY, SUMIDEN WIRE PRODUCTS CORPORATION, and WIRE MESH CORP., | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

## <u>ORDER</u>

Upon consideration of plaintiff's motion for judgment upon the agency record, responses thereto, plaintiffs' reply, the administrative record, and other pertinent papers, it is hereby:

ORDERED that plaintiffs' motion is DENIED;

ORDERED that the Department of Commerce's determination is sustained;

and it is further

ORDERED that judgment is entered in favor of the United States.

Dated: _____          _____
       New York, NY

                                              JUDGE

26