NONCONFIDENTIAL
VERSION

## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| DEACERO S.A.P.I. DE C.V. AND DEACERO USA, INC., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | |
| UNITED STATES, ) ) | Court No. 24-00212 |
| Defendant, ) ) | |
| and ) ) | |
| INSTEEL WIRE PRODUCTS COMPANY, SUMIDEN WIRE PRODUCTS CORPORATION, AND WIRE MESH CORP., ) ) ) ) | |
| Defendant-Intervenors. ) ) | |

### DEFENDANT-INTERVENORS' RESPONSE TO PLAINTIFFS' RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

KATHLEEN W. CANNON
ELIZABETH C. JOHNSON
MATTHEW T. MARTIN
**KELLEY DRYE & WARREN LLP**
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400
kcannon@kelleydrye.com
ejohnson@kelleydrye.com
mmartin@kelleydrye.com

Counsel to Insteel Wire Products Company,
Sumiden Wire Products Corporation, and
Wire Mesh Corp.

August 6, 2025

## TABLE OF CONTENTS

Page

STATEMENT PURSUANT TO RULE 56.2 ................................................................... 1

I.     THE ADMINISTRATIVE DETERMINATION UNDER REVIEW .................. 1

II.    ISSUES FOR REVIEW ................................................................................. 1

        1.    Whether Commerce's comparison of Deacero's U.S. production process for PC strand to the full PC strand production process in Mexico, starting with primary iron and steel inputs (i.e., steel billet and scrap) was in accordance with law .................................................................. 1

        2.    Whether Commerce's conclusion that Deacero's U.S. production processes are "minor or insignificant" is reasonable, supported by substantial evidence, and otherwise in accordance with law ................................................ 2

        3.    Whether Commerce's analysis the overall pattern of trade is supported by substantial evidence and in accordance with law ......................................................................................... 2

III.    REQUEST FOR RELIEF .............................................................................. 2

STANDARD OF REVIEW ...................................................................................... 2

ARGUMENT ........................................................................................................... 2

I.     COMMERCE'S COMPARISON OF DEACERO'S U.S. PROCESSING TO THE FULL PRODUCTION PROCESS IN MEXICO IS LAWFUL ............ 2

        A.    The Legislative History of Section 781 of the Act Supports Commerce's Application of its Methodology to Both 781(a) and 781(b) Cases ................................................................................. 4

        B.    Commerce Reasonably Relied on the Full PC Strand Production Process Rather than the ITC's Description of the Production Process ......................................................................................... 9

II.    COMMERCE'S FINAL DETERMINATION IS SUPPORTED BY THE RECORD .............................................................................................. 12

        A.    Commerce's Determination that Deacero's Production Process In the United States Was Minimal Is Supported by the Record .................. 12

i

**TABLE OF CONTENTS (CONTINUED)**

**Page**

B.    Commerce's Determination that the Value of Deacero's U.S. Processing Was Minimal Is Supported by the Record ............................ 15

C.    Commerce's Determination Regarding Patterns of Trade Is Supported by the Record ........................................................................ 16

CONCLUSION ........................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

<u>Al Ghurair Iron & Steel LLC v. United States</u>,
    536 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ................................................... 17-18

<u>Al Ghurair Iron & Steel LLC v. United States</u>,
    65 F.4th 1351 (Fed. Cir. 2023) ..................................................... *passim*

<u>Altx, Inc. v. United States</u>,
    370 F.3d 1108 (Fed. Cir. 2004)................................................... 12-13

<u>Canadian Solar Int'l Ltd. v. United States</u>,
    slip op. 25-59, 2025 WL 1420317 (Ct. Int'l Trade May 16, 2025) .........................................13

<u>Consolo v. Fed. Mar. Comm'n</u>,
    383 U.S. 607 (1966)................................................................12

<u>Hanon Sys. Ala. Corp. v. United States</u>,
    slip op. 25-94, 2025 WL 2028398 (Ct. Int'l Trade July 21, 2025)............................... *passim*

<u>HLDS (B) Steel Sdn Bhd v. United States</u>,
    slip op. 24-6, 2024 WL 244937 (Ct. Int'l Trade Jan. 23, 2024) ......................................... 9-10

<u>Nippon Steel Corp. v. United States</u>,
    458 F.3d 1345 (Fed. Cir. 2006) ................................................... 12-13

<u>U.S. Steel Grp. v. United States</u>,
    96 F.3d 1352 (Fed. Cir. 1996) ......................................................... 12-13

### Statutes and Regulations

19 U.S.C. § 1677j(a) ......................................................................... *passim*

19 U.S.C. § 1677j(a)(1)(C) ...................................................................2, 3

19 U.S.C. § 1677j(a)(2)................................................................ 12-15

19 U.S.C. § 1677j(b) ......................................................................... *passim*

**TABLE OF AUTHORITIES (CONTINUED)**

Page(s)

**Legislative Authorities**

H.R. Rep. No. 100-40, pt. 1 (1987)..................................................................... 4-5, 8

H.R. Rep. No. 100-316 (1994)...............................................................................6

S. Rep. No. 100-71 (1987)................................................................................ 4-7

S. Rep. No. 103-412 (1994) ...................................................................................6

Statement of Administrative Action Accompanying the Uruguay Round
    Agreements Act, H.R. Rep. No. 103-316 (1994) ("SAA") ............................................ *passim*

**Administrative Determinations**

Alloy and Certain Carbon Steel Threaded Rod From the People's Republic of
    China; Carbon and Alloy Steel Threaded Rod From the People's Republic of
    China: Final Affirmative Determination of Circumvention of the Antidumping
    and Countervailing Duty Orders, 89 Fed. Reg. 68,586
    (Dep't Commerce Aug. 27, 2024), and accompanying Decision Memorandum
    for the Final Determination in the Circumvention Inquiries Regarding the
    Antidumping Duty Order on Alloy and Certain Carbon Steel Threaded Rod
    from the People's Republic of China and the Countervailing Duty Order on
    Carbon and Alloy Steel Threaded Rod from the People's Republic of China
    (Aug. 20, 2024) ......................................................................................................7

Anti-Circumvention Inquiry of the Antidumping and Countervailing Duty Orders
    on Certain Pasta from Italy: Affirmative Final Determinations of
    Circumvention of Antidumping and Countervailing Duty Orders,
    68 Fed. Reg. 54,888 (Dep't Commerce Sept. 19, 2003)..................................... 14-15

Antidumping and Countervailing Duty Orders on Certain Collated Steel Staples
    From the People's Republic of China: Preliminary Affirmative
    Determinations of Circumvention With Respect to the Kingdom of Thailand
    and the Socialist Republic of Vietnam, 88 Fed. Reg. 57,931
    (Dep't Commerce Aug. 24, 2023) ..................................................................... 14-15

Antidumping Duty Order on Prestressed Concrete Steel Wire Strand (PC Strand)
    from Mexico: Preliminary Decision Memorandum for the Circumvention
    Inquiry with Respect to High Carbon Steel Wire Completed into PC Strand
    in the United States (Mar. 26, 2024) (P.R. 120) ("PDM") ............................................. *passim*

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

Carbon and Certain Alloy Steel Wire Rod From Mexico:
Affirmative Final Determination of Circumvention of the Antidumping Duty
Order, 77 Fed. Reg. 59,892 (Dep't Commerce Oct. 1, 2012), aff'd,
Deacero S.A. de C.V. v. United States, 817 F.3d 1332 (Fed. Cir. 2016) ...................................5

Carbon and Certain Alloy Steel Wire Rod From Mexico
Final Affirmative Determination of Circumvention of the Antidumping Duty
Order, 84 Fed. Reg. 9,089 (Dep't Commerce Mar. 13, 2019)...................................................5

Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea:
Final Affirmative Determination of Circumvention of the Antidumping Duty
Order, 88 Fed. Reg. 77,270 (Dep't Commerce Nov. 9, 2023), and
accompanying Issues and Decision Memorandum for the Final Affirmative
Determination of Circumvention of the Antidumping Duty Order on Certain
Circular Welded Non-Alloy Steel Pipe from the Republic of Korea
(Nov. 2, 2023) ................................................................................................................. 11-12

Certain Cold-Rolled Steel Flat Products from the Republic of Korea:
Affirmative Final Determinations of Circumvention of the Antidumping Duty
and Countervailing Duty Orders, 84 Fed. Reg. 70,934
(Dep't Commerce Dec. 26, 2019) ("Korea CRS Final Determination"), and
accompanying Issues and Decision Memorandum ("Korea CRS IDM"),
aff'd on other grounds, Ferrostaal Metals GmbH v. United States,
518 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ...........................................................................17

Certain Corrosion-Resistant Steel Products From the People's Republic of China:
Affirmative Final Determination of Circumvention Involving the United Arab
Emirates, 85 Fed. Reg. 41,957 (Dep't Commerce July 13, 2020).................................... 16-17

Certain Tissue Paper Products from the People's Republic of China:
Affirmative Final Determination of Circumvention of the Antidumping Duty
Order, 78 Fed. Reg. 40,101 (Dep't Commerce July 3, 2013)...................................................17

Granular Polytetrafluoroethylene Resin From Italy;
Final Affirmative Determination of Circumvention of Antidumping Duty
Order, 58 Fed. Reg. 26,100 (Dep't Commerce Apr. 30, 1993),
aff'd, Ausimont USA, Inc. v. United States, 882 F. Supp. 1087
(Ct. Int'l Trade 1995)...............................................................................................................7

Notice of Antidumping Duty Orders: Carbon and Certain Alloy Steel Wire Rod
from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine,
67 Fed. Reg. 65,945 (Dep't Commerce Oct. 29, 2002)............................................................5

**TABLE OF AUTHORITIES (CONTINUED)**

Page(s)

Notice of Antidumping Duty Order: Prestressed Concrete Steel Wire Strand from
 Mexico, 69 Fed. Reg. 4,112 (Dep't Commerce Jan. 28, 2004) ...................................5

Notice of Final Determination of Sales at Less Than Fair Value:
 Galvanized Steel Wire From Mexico, 77 Fed. Reg. 17,427
 (Dep't Commerce Mar. 26, 2012)..................................................................................5

Oil Country Tubular Goods from the People's Republic of China:
 Final Affirmative Determinations of Circumvention, 86 Fed. Reg. 67,443
 (Dep't Commerce Nov. 26, 2021), and accompanying Issues and Decision
 Memorandum, aff'd, HLDS (B) Steel Sdn Bhd v. United States,
 slip op. 24-6, 2024 WL 244937 (Ct. Int'l Trade Jan. 23, 2024) .......................... 9-10

Prestressed Concrete Steel Wire Strand from Mexico:
 Final Affirmative Determination of Circumvention of the Antidumping Duty
 Order, 89 Fed. Reg. 79,252 (Dep't Commerce Sept. 27, 2024)
 ("Final Determination") (P.R. 156), and accompanying Decision
 Memorandum for the Final Affirmative Determination of Circumvention of
 the Antidumping Duty Order on Prestressed Concrete Steel Wire Strand from
 Mexico (Sept. 20, 2024) ("IDM") (P.R. 155) ................................................... passim

Prestressed Concrete Steel Wire Strand from Mexico:
 Final Affirmative Determination of Circumvention of the Antidumping Duty
 Order; Correction, 89 Fed. Reg. 85,944 (Dep't Commerce Oct. 29, 2024)
 (P.R. 159) .....................................................................................................................1

Polyethylene Retail Carrier Bags from Taiwan:
 Affirmative Preliminary Determination of Circumvention of the Antidumping
 Duty Order, 79 Fed. Reg. 31,302 (Dep't Commerce June 2, 2014),
 and accompanying Preliminary Decision Memorandum, unchanged in
 Polyethylene Retail Carrier Bags from Taiwan: Affirmative Final
 Determination of Circumvention of the Antidumping Duty Order,
 79 Fed. Reg. 61,056 (Dep't Commerce Oct. 9, 2014) ......................................... 9-10

Standard Steel Welded Wire Mesh From Mexico:
 Antidumping Duty Order, 86 Fed. Reg. 43,525
 (Dep't Commerce Aug. 9, 2021) ..................................................................................5

Standard Steel Welded Wire Mesh From Mexico:
 Countervailing Duty Order, 86 Fed. Reg. 18,940
 (Dep't Commerce Apr. 12, 2021) .................................................................................5

## TABLE OF AUTHORITIES (CONTINUED)

**Page(s)**

Steel Concrete Reinforcing Bar from Mexico:
Antidumping Duty Order, 79 Fed. Reg. 65,925
(Dep't Commerce Nov. 6, 2014) ................................................................5

### Miscellaneous Authorities

Terence P. Stewart et al., 2 The GATT Uruguay Round: A Negotiating History
(1986-1992) (Terence P. Stewart ed., 1993) .............................................5

## DEFENDANT-INTERVENORS' RESPONSE TO PLAINTIFFS' RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade, Defendant-Intervenors, Insteel Wire Products Company, Sumiden Wire Products Corporation, and Wire Mesh Corp., respectfully respond to the Rule 56.2 Motion for Judgment on the Agency Record and Memorandum in Support thereof filed by Plaintiffs, Deacero S.A.P.I. de C.V. and Deacero USA, Inc. (collectively, "Deacero" or "Plaintiffs") (May 19, 2025) (ECF Nos. 28, 29) (hereinafter, "Pls.' Br.").

## STATEMENT PURSUANT TO RULE 56.2

## I.     THE ADMINISTRATIVE DETERMINATION UNDER REVIEW

The administrative decision under review is Prestressed Concrete Steel Wire Strand from Mexico: Final Affirmative Determination of Circumvention of the Antidumping Duty Order, 89 Fed. Reg. 79,252 (Dep't Commerce Sept. 27, 2024) ("Final Determination") (P.R. 156), as amended by Prestressed Concrete Steel Wire Strand from Mexico: Final Affirmative Determination of Circumvention of the Antidumping Duty Order; Correction, 89 Fed. Reg. 85,944 (Dep't Commerce Oct. 29, 2024) (P.R. 159), and accompanying Decision Memorandum for the Final Affirmative Determination of Circumvention of the Antidumping Duty Order on Prestressed Concrete Steel Wire Strand from Mexico (Sept. 20, 2024) ("IDM") (P.R. 155).[1]

## II.    ISSUES FOR REVIEW

1.   **Whether Commerce's comparison of Deacero's U.S. production process for PC strand to the full PC strand production process in**

---

[1]     Documents in the administrative record are cited using the Public Record ("P.R.") or Confidential Record ("C.R.") number corresponding to the record documents identified in the Index to the Administrative Record filed with this Court on February 5, 2025 (ECF No. 20).

**Mexico, starting with primary iron and steel inputs (i.e., steel billet and scrap) was in accordance with law.**

2. **Whether Commerce's conclusion that Deacero's U.S. production processes are "minor or insignificant" is reasonable, supported by substantial evidence, and otherwise in accordance with law.**

3. **Whether Commerce's analysis the overall pattern of trade is supported by substantial evidence and in accordance with law.**

## III.   REQUEST FOR RELIEF

Defendant-Intervenors respectfully request that the Court deny Deacero's motion for judgment on the agency record and sustain the Final Determination in its entirety.

## STANDARD OF REVIEW

Defendant-Intervenors adopt and incorporate herein the standard of review as presented by Defendant.  See Def.'s Resp. to Pls.' Mot. for J. on the Agency R. at 11-12 (July 23, 2025) (ECF Nos. 31, 32) (hereinafter, "Def.'s Br.").

## ARGUMENT

Defendant-Intervenors concur with and adopt Defendant's response.  See generally id.  The arguments presented here are intended to be additive to Defendant's response.

## I.   COMMERCE'S COMPARISON OF DEACERO'S U.S. PROCESSING TO THE FULL PRODUCTION PROCESS IN MEXICO IS LAWFUL

At the heart of this appeal is Deacero's dissatisfaction with the methodology the U.S. Department of Commerce ("Commerce") has consistently applied – in this and myriad analogous cases – to evaluate whether Deacero's processing of high carbon steel ("HCS") wire in the United States into prestressed concrete steel wire strand ("PC strand") is "minor or insignificant" under the circumvention statute.  19 U.S.C. § 1677j(a)(1)(C).  Specifically, Deacero takes issue with Commerce's comparison of Deacero's processing in the United States (which consists of assembling HCS wire imported from Deacero's affiliates in Mexico into finished PC strand) with

Deacero's <u>entire</u> PC strand production process in Mexico, beginning with the collection and sorting of steel scrap through the production of steel wire rod, the drawing of steel wire, and ultimately the production of PC strand.

Although Deacero purports to challenge Commerce's methodology of comparing the full production process in Mexico to Deacero's processing in the United States as "contrary to law," Deacero is unable to cite a single statute, regulation, or case that says Commerce is precluded from using this methodology to determine whether the further processing in the United States is "minor or insignificant" under 19 U.S.C. § 1677j(a)(1)(C).   <u>See</u> Pls.' Br. at 12, 30, 41; <u>id.</u> at 18 ("Commerce's Determination is Contrary to CIT and Federal Circuit Case Law").   Nor does Deacero does not dispute that Commerce has repeatedly employed the methodology used here in numerous other circumvention cases, and that the U.S. Court of Appeals for the Federal Circuit upheld this methodology in <u>Al Ghurair Iron & Steel LLC v. United States</u>, 65 F.4th 1351 (Fed. Cir. 2023).  <u>See</u> <u>id.</u> at 20.

Faced with this precedent, Deacero attempts to distinguish prior circumvention cases in which Commerce used this same methodology as "inapposite" because they involve assembly or completion in third countries under section 781(b) (19 U.S.C. § 1677j(b)), rather than assembly or completion in the United States under section 781(a) (19 U.S.C. § 1677j(a)).  <u>Id.</u> at 18-20 (citing <u>Macao Com. & Indus. Spring Mattress Mfr. v. United States</u>, 437 F. Supp. 3d 1324, 1329 (Ct. Int'l Trade 2020); <u>Al Ghurair Iron & Steel LLC v. United States</u>, 536 F. Supp. 3d 1357, 1368 (Ct. Int'l Trade 2021), <u>aff'd</u>, 65 F.4th 1351 (Fed. Cir. 2023)).  Deacero further argues that because this case arises under section 781(a) rather than section 781(b), Commerce is required by its own practice to limit any consideration of Deacero's PC strand production process in the subject country (<u>i.e.</u>,

Mexico) to the production process described by the U.S. International Trade Commission (the "ITC") in the original antidumping investigation.  Id. at 21-26.  Neither argument has any merit.

A.   **The Legislative History of Section 781 of the Act Supports Commerce's Application of its Methodology to Both 781(a) and 781(b) Cases**

Deacero claims that Commerce cannot apply the same methodology to evaluate whether further processing is "minor or insignificant" under section 781(a) as Commerce uses under 781(b) because such application "will deter 'legitimate investment,'" in the United States, which Deacero contends section 781(a) was intended to ensure.  Pls.' Br. at 17 (arguing consideration of the entire PC strand production process "will obviously deter legitimate investment, and would be contrary to Congress's contemplated purpose").  Commerce twice addressed and rejected that argument. Antidumping Duty Order on Prestressed Concrete Steel Wire Strand (PC Strand) from Mexico: Preliminary Decision Memorandum for the Circumvention Inquiry with Respect to High Carbon Steel Wire Completed into PC Strand in the United States at 11-12 (Mar. 26, 2024) (P.R. 120) (hereinafter, "PDM"); IDM at 12-17 (P.R. 155).

Deacero's focus on "legitimate investment" flips the intent of the circumvention statute on its head.  As Commerce explained, the primary purpose of the circumvention statute is to strengthen the antidumping and countervailing duty laws in order to better defend U.S. industries and workers from unfair imports.  PDM at 12 (P.R. 120); IDM at 12-17 (P.R. 155).  Congress clearly stated its goal to "restore confidence" in the domestic industry injured or threatened with material injury in the efficacy of trade remedies and "thereby encourage" the use of antidumping and countervailing duty laws "to their maximum potential."  H.R. Rep. No. 100-40, pt. 1, at 134-35 (1987).  Congress also sought to "send a clear message to foreign producers and trading partners that we will actively seek to prevent circumvention" and "thereby decrease the incentive foreign producers might have to 'finesse' their way around our trade laws, in order to engage in recognized

unfair trade practices." Id. at 135; see also S. Rep. No. 100-71, at 96, 100-01 (1987) ("Efforts to

circumvent antidumping or countervailing duties through processing operations in the United

States or third countries frustrate the intent of these laws, which is to offset unfair foreign trade

practices."). Thus, the circumvention statute's primary aim is to defend U.S. jobs and workers

from unfair imports.[2]

Deacero has also selectively quoted from the Statement of Administrative Action

Accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316 (1994) ("SAA") in

---

[2]    In negotiating the GATT and working with other trading partners to address the growing problem of circumvention, the United States Government also expressed a particular aim to discourage repeat offenders from skirting trade remedies: "In the case of repeat offenders or 'recidivist behavior,' the U.S. proposed the remedy of 'imposition of duties from the point of initiation of the antidumping investigation." Terence P. Stewart et al., 2 The GATT Uruguay Round: A Negotiating History (1986-1992), at 1623-24 (Terence P. Stewart ed., 1993). Deacero exemplifies this very behavior the United States Government has long sought to combat. See Letter from Kelley Drye & Warren LLP to Sec'y of Commerce Pertaining to Petitioners Req. for Circumvention Ruling at 2-5 (June 9, 2023) (C.R. 1; P.R. 1) (citing Notice of Antidumping Duty Orders: Carbon and Certain Alloy Steel Wire Rod from Brazil, Indonesia, Mexico, Moldova, Trinidad and Tobago, and Ukraine, 67 Fed. Reg. 65,945 (Dep't Commerce Oct. 29, 2002) (imposing antidumping duties on imports of Deacero's wire rod from Mexico); Carbon and Certain Alloy Steel Wire Rod From Mexico: Affirmative Final Determination of Circumvention of the Antidumping Duty Order, 77 Fed. Reg. 59,892 (Dep't Commerce Oct. 1, 2012) (finding Deacero circumvented the antidumping duty order on wire rod from Mexico), aff'd, Deacero S.A. de C.V. v. United States, 817 F.3d 1332 (Fed. Cir. 2016); Carbon and Certain Alloy Steel Wire Rod From Mexico Final Affirmative Determination of Circumvention of the Antidumping Duty Order, 84 Fed. Reg. 9,089 (Dep't Commerce Mar. 13, 2019) (finding Deacero again circumvented the antidumping duty order on wire rod from Mexico); Notice of Antidumping Duty Order: Prestressed Concrete Steel Wire Strand from Mexico, 69 Fed. Reg. 4,112 (Dep't Commerce Jan. 28, 2004) (imposing antidumping duties on imports of Deacero's PC strand from Mexico); Standard Steel Welded Wire Mesh From Mexico: Antidumping Duty Order, 86 Fed. Reg. 43,525 (Dep't Commerce Aug. 9, 2021) (imposing antidumping duties on imports of Deacero's wire mesh from Mexico)); see also Prestressed Concrete Steel Wire Strand from Mexico: Final Affirmative Determination of Circumvention of the Antidumping Duty Order, 89 Fed. Reg. 79,252 (Dep't Commerce Sept. 27, 2024) (finding Deacero circumvented the antidumping duty order on PC strand from Mexico), appeal docketed, Deacero S.A.P.I. de C.V. v. USA, No. 24-00212 (Ct. Int'l Trade Nov. 27, 2024); Steel Concrete Reinforcing Bar from Mexico: Antidumping Duty Order, 79 Fed. Reg. 65,925 (Dep't Commerce Nov. 6, 2014) (imposing antidumping duties on imports of Deacero's steel concrete reinforcing bar from Mexico); Notice of Final Determination of Sales at Less Than Fair Value: Galvanized Steel Wire From Mexico, 77 Fed. Reg. 17,427 (Dep't Commerce Mar. 26, 2012) (finding Deacero sold galvanized steel wire from Mexico into the United States at less than fair value); Standard Steel Welded Wire Mesh From Mexico: Countervailing Duty Order, 86 Fed. Reg. 18,940 (Dep't Commerce Apr. 12, 2021) (imposing countervailing duties on imports of Deacero's wire mesh from Mexico).

support of its untenable argument.  See Def.'s Br. at 15-16.  First, it claims "the legislative history **to section 781(a)** emphasizes that the purpose of the provision is to properly address circumvention while, at the same time, ensuring that anticircumvention inquiries '**will not deter legitimate investment** . . . .'"  Pls.' Br. at 17 (quoting SAA at 894) (emphasis added).  But the full quotation from the SAA concerns **both** "assembly or completion operations *in the United States or in third countries*."  SAA at 894 (emphasis added); see Def.'s Br. at 16.  Any concern about "legitimate investments," accordingly, does not differentiate Commerce's considerations under section 781(a) and 781(b).  Deacero also claims the "the legislative history of section 781(a) . . . indicate{s} that Congress intended to 'focus {} the anticircumvention inquiry … toward the *nature of the process* performed in the United States.'"  Pls.' Br. at 14-15 (quoting S. Rep. No. 103-412, at 81-82 (1994)) (emphasis in original).  Here again, the full sentence excerpted by Plaintiffs refers to shortcomings in **both** sections 781(a) and 781(b), as follows:

> Accordingly, section 230 amends sections 781(a) and (b) to shift the focus of the anticircumvention inquiry away from a test of the difference in *value* between the subject merchandise and the imported parts or components toward the *nature of the process* performed **in the United States or a third country**.

S. Rep. No. 103-412, at 81-82 (1994) (italics in original) (bold emphasis added); see also H.R. Rep. No. 100-316, at 893-94 (1994).  The full sentences from the legislative history fail to draw any distinction between Congress's intent with regard to section 781(a) and 781(b).

Rather, as Commerce correctly explained in the underlying proceeding, sections 781(a) and 781(b) "share a single legislative history."  IDM at 13 (P.R. 155); PDM at 11-12 (P.R. 120) (citing SAA at 892-895).  The Senate Finance Committee in 1987, for example, explained its overarching "concern" about efforts "to circumvent antidumping or countervailing duties through processing operations in the United States or third countries."  S. Rep. No. 100-71, at 96 (1987)

(emphasis added). Senator Heinz also emphasized the problem of increasing trade flows of primary materials that are shipped to either a third country <u>or</u> to the United States before being further processed or assembled. <u>Id.</u> at 268-72.

Consistent with Congress's primary concern about foreign producers' efforts to circumvent antidumping and countervailing duties through further processing operations in either the United States or third countries, Commerce has appropriately developed its methodology over time in full awareness and consideration of its approaches under section 781 as a whole. <u>See, e.g.</u>, <u>Granular Polytetrafluoroethylene Resin From Italy; Final Affirmative Determination of Circumvention of Antidumping Duty Order</u>, 58 Fed. Reg. 26,100, 26,108 (Dep't Commerce Apr. 30, 1993) ("{A} review of the legislative history accompanying section 781(a) (as well as section 781(b)) clearly demonstrates that Congress did not limit the consideration of qualitative factors to section 781(a)(2)."), <u>aff'd</u>, <u>Ausimont USA, Inc. v. United States</u>, 882 F. Supp. 1087 (Ct. Int'l Trade 1995); <u>Alloy and Certain Carbon Steel Threaded Rod From the People's Republic of China; Carbon and Alloy Steel Threaded Rod From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping and Countervailing Duty Orders</u>, 89 Fed. Reg. 68,586 (Dep't Commerce Aug. 27, 2024), and accompanying <u>Decision Memorandum for the Final Determination in the Circumvention Inquiries Regarding the Antidumping Duty Order on Alloy and Certain Carbon Steel Threaded Rod from the People's Republic of China and the Countervailing Duty Order on Carbon and Alloy Steel Threaded Rod from the People's Republic of China</u> (Aug. 20, 2024) at 9 (Comment 2) ("{T}he circumvention regulations are consistent with the proposition that section 781(a) of the Act should not be interpreted in a manner different from section 781(b), as the regulations refer to 'parts and components' in both instances.") (quoting 19 C.F.R. § 351.226(h)-(i)).

Finally, Plaintiffs' fixation on the "screwdriver assembly operations" scenario is unavailing. Plaintiffs' reliance on this one example of circumvention is misleading because Plaintiffs take the agency's rationale in a section 781(b) circumvention inquiry, modify the agency's statement, and apply it in the singular context of "section 781," stating: "Commerce has also recognized the 'stereotypical circumvention' scenario that section 781 is intended to address, namely the scenario in which a 'screwdriver manufacturer set up in {the United States or} a third country . . . is sent all of the parts that it merely snaps together in an effort to avoid AD and CVDs.'" Pls.' Br. at 15 (alteration in Plaintiffs' brief) (quoting Antidumping and Countervailing Duty Orders on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam, 88 Fed. Reg. 57,419 (Dep't Commerce Aug. 23, 2023), and accompanying Issues and Decision Memorandum at 67). Moreover, as Commerce noted in the underlying proceeding, the "screwdriver operations" scenario is merely one example of circumvention Congress sought to address. IDM at 9 (P.R. 155). Congress also sought to address scenarios "such as when picture tubes and printed circuit boards are shipped by the manufacturer to a related subsidiary in the United States to be assembled and then sold as a television receiver," or when, for example, "steel pipe is imported by a related party that threads it and sells it as threaded pipe." H.R. Rep. No. 100-40, pt. 1, at 134 (1987); see IDM at 9 (P.R. 155). Indeed, this Court recently rejected a similar narrow fixation on the "screwdriver operations" scenario:

> The SAA provides that one goal in the text of the Act is to address "screwdriver operations" that may be circumventing AD/CVD orders, but it is not the *only* goal. SAA at 898. Rather, the SAA explains that "the overall thrust of section 230 of the bill is to focus the anticircumvention inquiry on the question of whether minor or insignificant assembly or completion is taking place," SAA at 894,

and that "sections 781(a)(2) and 781(b)(2)" list the five factors to determine whether assembly or completion is minor or significant. <u>SAA</u> at 894. The <u>SAA</u> reinforces that Commerce must consider these five factors, implementing a fact-bound determination, to find minor or insignificant assembly or completion. Nowhere does the <u>SAA</u> limit the application of the statute to situations like a "screwdriver operation."

<u>Hanon Sys. Ala. Corp. v. United States</u>, slip op. 25-94 at 14, 2025 WL 2028398, at *1, *6 (Ct. Int'l Trade July 21, 2025) (emphasis in original).

Thus, as Commerce correctly reasoned and explained in the underlying proceeding, Plaintiffs fail to establish that the legislative history requires that Commerce adopt separate approaches for 781(a) and 781(b) inquiries. <u>IDM</u> at 13-14 (P.R. 155).

**B.    Commerce Reasonably Relied on the Full PC Strand Production Process Rather than the ITC's Description of the Production Process**

Deacero's argument that Commerce is required to define the production process in the same way as the ITC is premised on Deacero's same baseless distinction between 781(a) proceedings and 781(b) proceedings. As Defendant accurately notes, the "manufacturing process described in ITC reports, which were issued in a different context for different purposes, are not binding to Commerce's circumvention analysis." Def.'s Br. at 18 (citing <u>Light-Walled Rectangular Pipe and Tube From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders</u>, 88 Fed. Reg. 77,283 (Dep't Commerce Nov. 9, 2023), and accompanying Issues and Decision Memorandum at 44, <u>remanded on other grounds, Hoa Phat Steel Pipe Co. v. United States</u>, 755 F. Supp. 3d 1337 (Ct. Int'l Trade 2025)).[3] Deacero ignores or disregards the numerous cases in which Commerce

---

[3]    <u>See also</u> <u>IDM</u> at 15 (P.R. 155) (citing <u>Polyethylene Retail Carrier Bags from Taiwan: Affirmative Preliminary Determination of Circumvention of the Antidumping Duty Order</u>, 79 Fed. Reg. 31,302 (Dep't Commerce June 2, 2014), and accompanying Preliminary Decision Memorandum at 9-11, <u>unchanged in</u> <u>Polyethylene Retail Carrier Bags from Taiwan: Affirmative Final Determination of Circumvention of the Antidumping Duty Order</u>, 79 Fed. Reg. 61,056

rejected the ITC's description of the production process, however, simply because these cases

arose in the 781(b) context.  Pls.' Br. at 25.  Because Deacero's attempt to differentiate 781(a)

from 781(b) cases fails, so too does its argument that Commerce acted in an "arbitrary and

capricious" manner in evaluating Deacero's full production process here.  Id. at 21-26.

Commerce appropriately relied on the full production process in Mexico as described by

Deacero itself, beginning with the sorting and melting of scrap into steel billets.  IDM at 18-19

(P.R. 155); PDM at 15-16 (P.R. 120) (citing Response from Wilmer Cutler Pickering Hale and

Dorr LLP to Sec'y of Commerce Pertaining to Deacero 2nd Supp. QR at 3-6 (Mar. 7, 2024) (C.R.

165-80; P.R. 110-15) (hereinafter, "Deacero 2nd Supp. QR")).  Specifically, Deacero stated:

> The production process, including sourcing of raw materials, of
> HCS wire used by Deacero USA for the manufacturing of PC strand
> is as follows: billets are produced at [                    ] from
> the melting of scrap; the billets are used to produce, among other
> products, wire rod at [                    ]; the wire rod is sent
> from [                    ] where the
> wire rod undergoes the drawing stage – the first of four stages of the
> PC strand production process – to produce HCS wire; the HCS wire
> produced at the [                    ] is exported to Houston where
> Deacero USA uses the HCS wire to complete the additional three
> stages of the PC strand production: stranding, stabilizing, and
> packaging.

Deacero 2nd Supp. QR at 3-6 (CR 165-80; P.R. 110-15)  Though Deacero would like to define

the PC strand production process as beginning with the drawing of HCS wire, the record shows –

in Deacero's own words – that the production process begins with the melting of scrap to make

---

(Dep't Commerce Oct. 9, 2014); id. at 17 (P.R. 155) (citing Oil Country Tubular Goods from the
People's Republic of China: Final Affirmative Determinations of Circumvention, 86 Fed. Reg.
67,443 (Dep't Commerce Nov. 26, 2021), and accompanying Issues and Decision Memorandum
at Comments 1 and 2, aff'd, HLDS (B) Steel Sdn Bhd v. United States, slip op. 24-6 at 1, 5-10,
2024 WL 244937, at *1, *5-10 (Ct. Int'l Trade Jan. 23, 2024); cf. HLDS (B) Steel Sdn Bhd v.
United States, slip op. 24-6 at 12 n.8, 2024 WL 244937, at *1, *4 n.8 (Ct. Int'l Trade Jan. 23, 2024)
("The {ITC}'s material injury determination in an antidumping or countervailing duty proceeding,
however, has no bearing on Commerce's obligations under the statute's anti-circumvention
provisions.").

steel billets.   This is not a "hypothetical" production process, as Deacero repeatedly (and puzzlingly) posits (see Pls.' Br. at 1-2, 4, 15, 18, 20), but rather Deacero's <u>actual</u> production process in Mexico as reported in Deacero's questionnaire response to Commerce.   The record supports Commerce's consideration of it here.

Finally, that domestic producers may purchase wire rod to be drawn into HCS wire for the production of PC strand is irrelevant to Commerce's determination of whether Deacero's U.S. production operations are "minor or insignificant" as compared to its full production process in Mexico.  <u>See</u> Pls.' Br. at 34-35.   First, Deacero is importing <u>wire</u>, not wire rod, to produce PC strand in the United States.    Second, in determining whether a respondent's assembly or completion of a product is "minor or insignificant" in the United States or a third country, Commerce compares that operation to the full production process in the subject country – <u>not</u> to another producer's manufacturing process in the United States or a third country.   In <u>Circular Welded Non-Alloy Steel Pipe from Korea</u>, for instance, Commerce rejected a respondent's challenge to Commerce's comparison of the full production process for steel pipe in the subject country, even where "the domestic interested parties themselves employ the process described by the ITC – they do not produce the steel coils used in production but, instead, they purchase coils from other suppliers." <u>Certain Circular Welded Non-Alloy Steel Pipe From the Republic of Korea: Final Affirmative Determination of Circumvention of the Antidumping Duty Order</u>, 88 Fed. Reg. 77,270 (Dep't Commerce Nov. 9, 2023), and accompanying <u>Issues and Decision Memorandum for the Final Affirmative Determination of Circumvention of the Antidumping Duty Order on Certain Circular Welded Non-Alloy Steel Pipe from the Republic of Korea</u> (Nov. 2, 2023) at 24, 28-33 (Comment 6).   Commerce noted that it compares the U.S. or third country assembly operations to the full production process in the subject country because this methodology "reflects

{Commerce's} concerns with circumvention being achieved by shifting one or more of the last few minor or insignificant steps of the production process to a third country." Id.; see also IDM at 14 (P.R. 155) ("{T}his comparison to the entire process of producing PC strand from primary iron and steel inputs is relevant in section 781(a) and 781(b) circumvention inquiries because it is relevant to whether a producer would reasonably move its further processing across borders to avoid the discipline of an AD or CVD order.") (citing PDM at 15 (P.R. 120)).

Accordingly, Commerce's comparison of Deacero's assembly or completion of PC strand in the United States to its entire PC strand production process in Mexico is in accordance with law and consistent with Commerce's practice.

## II.    COMMERCE'S FINAL DETERMINATION IS SUPPORTED BY THE RECORD

### A.    Commerce's Determination that Deacero's Production Process In the United States Was Minimal Is Supported by the Record

As Defendant correctly notes, Plaintiffs' criticisms of Commerce's findings and conclusions regarding the five factors under 19 U.S.C. § 1677j(a)(2) are largely duplicative of their position that Commerce should have disregarded the full extent of Plaintiffs' production of PC strand in Mexico. See Def.'s Br. at 18-22; Pls.' Br. at 30-36. Plaintiffs' arguments are unavailing for the additional following reasons.

First, Plaintiffs fail to establish that Commerce's findings and conclusions are unsupported by substantial evidence. Substantial evidence may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). The question for the court "is not whether {it} agree{s} with Commerce's decision, nor whether {it} would have reached the same result as Commerce had the matter come before {it} for decision in the first instance, but whether Commerce's

determination is reasonable and supported by the record." Hanon Sys., slip op. 25-94 at 8, 2025 WL 2028398, at *1, *3 (citing Nippon Steel Corp. v. United States, 458 F.3d 1345, 1352 (Fed. Cir. 2006); U.S. Steel Grp. v. United States, 96 F.3d 1352, 1357 (Fed. Cir. 1996); Altx, Inc. v. United States, 370 F.3d 1108, 1121 (Fed. Cir. 2004)). Plaintiffs' arguments are mere disagreement with Commerce's assessment of the record evidence. See, e.g., Pls.' Br. at 32-33 (citing Prelim. Analysis Memo. at 6-7 (C.R. 183-84; P.R. 121)); id. at 35 (citing PDM at 16-17 (P.R. 120); IDM at 19 (P.R. 155)).

Second, Deacero claims Commerce "ignored," certain record evidence, much of which is actually included in Commerce's analysis. For example, Commerce addressed and considered the fact that [                                                                ] Pls.' Br. at 31; PDM at 10 (P.R. 120). Commerce also addressed and considered the production capacity figures that Plaintiffs note. Pls.' Br. at 35; Prelim. Analysis Memo. at 7-8 (C.R. 183-84; P.R. 121). Despite Plaintiffs' claim that Commerce failed to consider "that Deacero has invested significant sums in operations directly related to its PC strand operations {in Houston}," Plaintiffs proceed to cite and quote the very portions of Commerce's preliminary and final decision memoranda where Commerce considered this evidence. See Pls.' Br. at 30-31 (citing Memo. from USDOC to the File Pertaining to Deacero Prelim. Analysis Memo. at 4 (Mar. 26, 2024) (C.R. 183-84; P.R. 121) (hereinafter, "Prelim. Analysis Memo.")).

Third, even if Commerce did not explicitly refer to some of the record evidence that Plaintiffs claim was wrongly overlooked, it would be harmless error in light of the agency's extensive findings and analysis under 19 U.S.C. § 1677j(a)(2) based on the record as a whole. See Canadian Solar Int'l Ltd. v. United States, slip op. 25-59 at 16-17, 2025 WL 1420317, at *1, *6-8 (Ct. Int'l Trade May 16, 2025); Al Ghurair Iron & Steel LLC v. United States, 65 F.4th 1351, 1363

(Fed. Cir. 2023) ("Commerce's finding of circumvention involved a multi-factor test and was supported by many findings other than its calculation of AGIS's value added.").  Moreover, because Commerce found that the totality of the record evidence with respect to <u>each</u> of the five factors under 19 U.S.C. § 1677j(a)(2) weighs in favor of finding Deacero's processing to be minor or insignificant, Plaintiffs' argument as to any one of these factors would not change the outcome of Commerce's decision.  <u>See</u> <u>IDM</u> at 17-21 (P.R. 155); <u>see</u> <u>also</u> <u>SAA</u> at 893 ("Commerce will evaluate each of these factors as they exist either in the United States or a third country, depending on the particular circumvention scenario. No single factor will be controlling.").

<u>Fourth</u>, as to Plaintiffs' argument that Commerce should have stated its analysis of the level of research and development ("R&D") in relative rather than absolute terms (<u>see</u> Pls.' Br. at 31-32),[4] Commerce addressed and recognized – on a relative basis – that "neither Deacero's U.S. nor Mexico operations are R&D intensive."  <u>IDM</u> at 18 (P.R. 155); <u>see</u> Prelim. Analysis Memo. at 5-6 (C.R. 183-84; P.R. 121).  Commerce's analysis overall and conclusion in this regard is ultimately consistent with Commerce's precedent.  <u>See</u> Letter from Kelley Drye & Warren LLP to Sec'y of Commerce Pertaining to Petitioners Pre-Prelim. Cmts. at 11-12 (Mar. 7, 2024) (C.R. 164; P.R. 109) (citing <u>Antidumping and Countervailing Duty Orders on Certain Collated Steel Staples From the People's Republic of China: Preliminary Affirmative Determinations of Circumvention With Respect to the Kingdom of Thailand and the Socialist Republic of Vietnam</u>, 88 Fed. Reg. 57,931 (Dep't Commerce Aug. 24, 2023), and accompanying Preliminary Decision Memorandum at 20); <u>Anti-Circumvention Inquiry of the Antidumping and Countervailing Duty Orders on Certain Pasta</u>

---

[4]     Deacero's claim that Commerce purportedly failed to evaluate its R&D on a "relative" rather than "absolute" basis is disingenuous in light of Deacero's immediately preceding argument that Commerce should have found Deacero's investments in the United States were not minor based on absolute U.S. investment figures, without considering Deacero's relative investments in Mexico. <u>See</u> Pls.' Br. at 30-31 ("Deacero's [                    ] dollar investment in its U.S. PC strand business weighs against a finding that its U.S. process is 'minor or insignificant.'").

from Italy: Affirmative Final Determinations of Circumvention of Antidumping and Countervailing Duty Orders, 68 Fed. Reg. 54,888, 54,889 (Dep't Commerce Sept. 19, 2003) ("{W}e find that the process of assembly or completion in the United States is minor and insignificant, since . . . the level of research and development in the United States is non-existent. . . .").

Thus, not only do Plaintiffs' criticisms of Commerce's analysis under the statutory factors fail to prove that the ultimate outcome would differ if the agency had agreed to apply Plaintiffs' preferred methodologies, they also rely on reweighing the record evidence, which this Court appropriately declines to do. See, e.g., Hanon Sys., slip op. 25-94 at 18-20, 2025 WL 2028398, at *1, *10-12. For this and all of the foregoing reasons, Plaintiffs' challenges to Commerce's findings and analysis under 19 U.S.C. § 1677j(a)(2) are unavailing.

**B.    Commerce's Determination that the Value of Deacero's U.S. Processing Was Minimal Is Supported by the Record**

Commerce's determination that the value of Deacero's processing in the United States represents a small proportion of the value of its PC strand sold in the United States is also supported by substantial evidence. See Def.'s Br. at 21-22. Deacero complains that Commerce's addition of direct costs (i.e., Deacero's reported costs for "direct materials, direct labor, factory overhead, packing, selling, general and administrative expenses (SG&A)") to the cost of HCS wire from its Mexican affiliate "implicitly inflates the value of the HCS wire that Deacero USA imports," for calculating the value of Deacero's additional processing in the United States. Pls.' Br. at 36. As this Court recently noted, however, "{t}he statute does not provide any specific methodology for Commerce to follow in making this calculation." Hanon Sys., slip op. 25-94 at 23, 2025 WL 2028398, at *9. In fact, in Hanon Systems, the Court upheld as "reasonable" Commerce's third-country processing value calculation, which added to the cost of production "labor, fixed and

15

variable overhead, selling, general, and administrative items, and interest, and divided the sum by the per-unit weighted-average value of the mandatory respondents' U.S. sales of inquiry merchandise . . . ." Id. at 24, 2025 WL 2028398, at *9-10. The Court should similarly find Commerce's methodology reasonable in this case.

### C. Commerce's Determination Regarding Patterns of Trade Is Supported by the Record

As Deacero concedes, "{n}either the statute nor Commerce's regulations identify any particular time periods for Commerce to consider in evaluating the factors under section 781(a)(3)." Pls.' Br. at 37. Thus, Deacero does not contend that Commerce's selection of the comparison periods for evaluating whether patterns of trade support an affirmative circumvention finding is contrary to law. Instead, Deacero argues the selection of these periods "ignore{s} relevant record evidence" – namely, that "Deacero USA **[**


**]**." Id. at 39 (emphasis in original).

As Defendant correctly notes, Deacero's arguments are irrelevant, as "the statute does not require Commerce to consider Deacero's reason for an increase in imports." Def.'s Br. at 23 (citing 19 U.S.C. § 1677j(a)(3)(C)). In fact, Commerce has repeatedly found that intent is not an element in circumvention inquiries:

> The section of the Act identifying the factors for evaluating whether merchandise completed or assembled in a foreign country is circumventing an order does not specify that Commerce should consider the intent of a respondent as part of its analysis. Rather, section 781(b)(1)(E) of the Act provides that before issuing an affirmative circumvention determination Commerce should "determine{} that action is appropriate . . . to prevent evasion" of the relevant AD/CVD orders at issue. Nowhere does the statute indicate that "evasion" must be intentional, or that a respondent in the third country must have the "intent" to evade duties. According to AGIS's interpretation of the Act, even if circumvention of an AD or CVD order exists, Commerce must also — through some

> undefined means — ascertain a respondent's intent to evade duties
> before it may determine that circumvention has occurred. Not only
> is an intent analysis inherently impractical in the context of trade
> remedies, there is no support for AGIS's argument in the statute.
> Indeed, we have previously explained that intent is not a necessary
> element of a finding of circumvention.

Certain Corrosion-Resistant Steel Products From the People's Republic of China: Affirmative Final Determination of Circumvention Involving the United Arab Emirates, 85 Fed. Reg. 41,957 (Dep't Commerce July 13, 2020), and accompanying Issues and Decision Memorandum at 13-14 (footnotes omitted) (quoting 19 U.S.C. § 1677j(b)(1)(E)); see also Certain Cold-Rolled Steel Flat Products from the Republic of Korea: Affirmative Final Determinations of Circumvention of the Antidumping Duty and Countervailing Duty Orders, 84 Fed. Reg. 70,934 (Dep't Commerce Dec. 26, 2019) (hereinafter, "Korea CRS Final Determination"), and accompanying Issues and Decision Memorandum at 57-60 (hereinafter, "Korea CRS IDM"), aff'd on other grounds, Ferrostaal Metals GmbH v. United States, 518 F. Supp. 3d 1357, 1375-76 (Ct. Int'l Trade 2021); Certain Tissue Paper Products from the People's Republic of China: Affirmative Final Determination of Circumvention of the Antidumping Duty Order, 78 Fed. Reg. 40,101 (Dep't Commerce July 3, 2013), and accompanying Issues and Decision Memorandum at 7 (hereinafter, "Tissue Paper IDM"). This Court has affirmed Commerce's analysis on this issue. See Al Ghurair, 536 F. Supp. 3d at 1370 ("{Commerce} is not required to determine intent during a circumvention inquiry.") (citing Tissue Paper IDM at 7), aff'd, 65 F.4th 1351 (Fed. Cir. 2023).

The U.S. Court of International Trade has noted that "Commerce has found circumvention regardless of the point in time at which third-country operations were established, including instances in which the establishment of such operations preceded the issuance of the underlying AD or CVD order." Id. at 1369-70 (citing Korea CRS Final Determination and Korea CRS IDM at 57-60). The Court went on to state that:

> This conclusion is buttressed by the fact that when Congress intended to incorporate temporal elements in a circumvention inquiry, Congress did so expressly. *See* 19 U.S.C. § 1677j(b)(3)(C). Section 1677j(b)(3)(C) provides that Commerce consider in a circumvention inquiry whether imports from a third country have increased after the initiation of the investigation that resulted in the issuance of the order. 19 U.S.C. § 1677j(b)(3)(C). ***Notably, the statute does not provide for consideration of the sequencing of establishment of operations relative to an AD/CVD order; the statute addresses only the timing of actual imports***. 19 U.S.C. § 1677j(b)(3)(C).

Id. (emphasis added). Thus, Commerce properly declined to consider the timing of, and reasons for, Deacero's production of PC Strand in the United States as part of its analysis of the patterns of trade. Commerce's determination that the patterns of trade support an affirmative circumvention finding under section 781(a)(3) were accordingly reasonable.

## CONCLUSION

For the reasons stated, Defendant-Intervenors respectfully request that the Court deny Deacero's motion for judgment on the agency record and sustain the Final Determination in its entirety.

Respectfully submitted,

/s/ Elizabeth C. Johnson

KATHLEEN W. CANNON
ELIZABETH C. JOHNSON
MATTHEW T. MARTIN
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400
kcannon@kelleydrye.com
ejohnson@kelleydrye.com
mmartin@kelleydrye.com

Counsel to Defendant-Intervenors

Dated: August 6, 2025

**CERTIFICATE OF COMPLIANCE**
**WITH U.S. COURT OF INTERNATIONAL TRADE**
**STANDARD CHAMBERS PROCEDURES**

Pursuant to the United States Court of International Trade Standard Chambers procedures, counsel for Defendant-Intervenors Insteel Wire Products Company, Sumiden Wire Products Corporation, and Wire Mesh Corp. certifies that this Response to Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record contains 6,032 words, including footnotes, tables, and charts. The word count certification is made in reliance on the word-count feature contained in Microsoft Enterprise - 365.

/s/ Elizabeth C. Johnson

KATHLEEN W. CANNON
ELIZABETH C. JOHNSON
MATTHEW T. MARTIN
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400
kcannon@kelleydrye.com
ejohnson@kelleydrye.com
mmartin@kelleydrye.com

Counsel to Insteel Wire Products Company,
Sumiden Wire Products Corporation, and
Wire Mesh Corp.

August 6, 2025